**RAYMOND INTERNATIONAL, INC.,
a corporation, Plaintiff,**

v.

**BOOKCLIFF CONSTRUCTION, INC.,
a corporation, Defendant,**

v.

**METROPOLITAN UTILITIES DISTRICT, a Municipal corporation,
Third-Party Defendant.**

Civ. No. 03365.

United States District Court,
D. Nebraska.

June 28, 1972.

John T. Grant, Omaha, Neb., for plaintiff.

Leo Eisenstatt, Omaha, Neb., for defendant.

W. L. Strong, Omaha, Neb., for third-party defendant.

## MEMORANDUM

RICHARD E. ROBINSON, Senior Judge.

This matter comes before the Court following a trial to this Court without a

jury. The following shall constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

The jurisdiction of this Court is founded upon diversity of citizenship and the amount in controversy, exclusive of interest and costs, exceeds the sum of Ten Thousand Dollars [$10,000.00].

The plaintiff, Raymond International, Inc. [hereinafter referred to as Raymond], filed its complaint against Bookcliff Construction, Inc. [hereinafter called Bookcliff], seeking recovery of the sum of $35,500.00 [less an admitted backcharge of $254.50] alleged to be due for work performed by Raymond pursuant to a written contract.

[A second and third claim originally asserted by the plaintiff were dismissed upon the motion of the plaintiff].

Subsequently Bookcliff filed a third-party complaint against the Metropolitan Utilities District [hereinafter referred to as "MUD"] for damages if Bookcliff is found liable to Raymond and for sums in addition to any possible liability to the plaintiff.

The Court will first set forth general findings of fact and then address each claim separately.

On June 22, 1966, Bookcliff entered into a written contract with MUD. In consideration of approximately $1,850,000 Bookcliff was to construct a well field water collection system for MUD's .Platte River Water Treatment Plant. In general Bookcliff was to install pipes and other apparatus necessary to transport water from 37 existing wells located along the Platte River and south of Omaha, Nebraska, to the water treatment plant located approximately one-half mile north of the wells. Thus the system in question was to connect with the wells at one end and the treatment plant at the other end. The wells and the plant are not the subject of the present lawsuit.

Subsequently on August 3rd, 1966, Bookcliff subcontracted with Raymond to line the interiors of underground pipes with cement mortar. This work was to be performed after the pipes were placed into the ground.

Then in June, 1967, flooding occurred at the construction site, and the defendant, Bookcliff, alleges that all damages were caused by the flooding, and that MUD should ultimately be liable for damages caused by the flooding.

RAYMOND'S CLAIM AGAINST BOOKCLIFF:

The Court will first consider the claim of the plaintiff, Raymond as against Bookcliff. The foundation of this claim is the "subcontract" [Plaintiff's Exhibit # 3]. Pursuant to this contract, Raymond was to "furnish all labor, materials, tools, equipment, transportation, supervision and 'know how' for the complete construction of all cement mortar lining—in place required for all 42″, 48″, and 60″ pipe and fittings, including all necessary cleaning preparatory to the lining and including necessary curing and final clean up . . . ALL FOR THE LUMP SUM OF . . . $35,500.00".

It was further stated that:

"It is mutually understood and agreed that the contractor will complete the installation of the pipe lines including the installation of all valves and fittings, and will remove any mud and debris from the lines to be lined, leaving it 'broom' clean."

Raymond satisfactorily performed the work called for by the contract and this work was accepted by Bookcliff, but no payment has been made by Bookcliff to Raymond. There is no dispute as to these facts.

However, dirt, sand, and debris entered the pipe as a result of the flooding, and Bookcliff was forced to remove the flood debris. Since the contract explicitly provided that Bookcliff was to leave the pipes "broom clean" there is little room for dispute as to Bookcliff's liability to Raymond. MUD has paid Bookcliff for the work performed, but Bookcliff has not paid Raymond.

The defendant, Bookcliff, has asserted an "offset" by way of an amended answer which is asserted only in event that MUD is not liable to Bookcliff. ·

■ The plaintiff objected to this untimely motion to amend the answer since it came after all discovery was completed, and was filed just prior to trial. Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend should be given freely when justice so requires, and it appears that the discovery adequately covered the subject matter of the offset such that prejudice to the plaintiff was minimized.

■■ The plaintiff also contends the defendant, Bookcliff, is in reality asserting a counter-claim and thus barred by the applicable statute of limitations. However, in this situation the amendment would relate back to the date of the original pleading, because it arises out of the same conduct, transaction, or occurrence. See Federal Rules of Civil Procedure 15[c] and Crowder v. Gordons Transports Inc., 387 F.2d 413 [8th Cir. 1967]. Thus the objections to the amendment are without merit. Also without merit is the defense raised by the amended answer. The defendant presented no credible evidence which would support such a claim and on the contrary, the contract provided that Bookcliff turn over the pipe "broom clean" to Raymond for lining, and the debris entered the pipe when it was under the control of Bookcliff. Thus any expenses incurred by Bookcliff were spent in compliance with the terms of the contract. Raymond is clearly entitled to be paid for the work satisfactorily done.

The plaintiff asserts it is entitled to pre-judgment interest on its contractual damages. The amount claimed is expressly set forth in the contract. The plaintiff did deduct a back payment but there is no dispute as to the amount. Thus the sum due is fixed and determined or liquidated.

Raymond completed the work on October 20th, 1967, and MUD paid Bookcliff for the work on November 29th, 1967.

The Nebraska Supreme Court has held that interest is allowable from the date of the completion of the contract when "[T]he contract is found to be clear and unambiguous and the defense untenable"; Mid States Engineering v. Rohde, 182 Neb. 590, 156 N.W.2d 149 [1968]. *Accord*, National Fire Ins. Co. of Hartford v. Evertson, 157 Neb. 540, 60 N.W. 2d 638 [1953] and Gee v. Sutton, 149 Neb. 603, 31 N.W.2d 747 [1948].

■ The existence of an unliquidated set-off or counterclaim does not in this case bar interest prior to the entry of judgment. Eastmount Const. Co. v. Transport Mfg. & Equip. Co., 301 F.2d 34 [8th Cir. 1962].

## BOOKCLIFF'S CLAIM AGAINST MUD:

The real dispute in this lawsuit revolves about the question of whether Bookcliff or MUD should bear the additional expenses caused by the flooding.

Bookcliff first prays for judgment against MUD for all sums that are adjudged against Bookcliff in favor of Raymond and also for additional damages independent of the liability to Raymond.

Bookcliff asserts four grounds of liability for both claims in its third-party complaint:

"[a] That MUD contracted with Bookcliff by a written contract containing several documents prepared by MUD, none of which mentioned or warned of flooding.

"[b] That MUD, as owner of the said Platte River site, had a duty to prepare and maintain the said job site free of all foreseeable risks and hazards or in the alternative to warn Bookcliff of any foreseeable hazards and warnings that said job site was not prepared or maintained adequately for flooding.

"[c] That said flood and flooding of June of 1967 was not so unusual as could not be foreseen by the owner, MUD, and said flooding should have been reasonably anticipated by MUD

and adequate measures for the prevention of damages due to flooding should have been taken.

"[d] That MUD, by and through its agents and representatives and with its full knowledge, created and constructed, what are termed in the construction business as finger dikes but that same were not adequate to control flooding and that MUD could foresee that said finger dikes were not adequate to protect the said Platte River site from flood damage."

MUD contends: that the contract specifically provided that the contractor was to inspect the construction site and that the inspection would have revealed the possibility of flooding; that it was under no duty to provide any flood protection; that Bookcliff contracted to deliver a finished product of acceptable standards to MUD, and that Bookcliff must bear the risk and burden of damages due to flooding which occurred prior to the time that the contracted result was obtained.

After fully reviewing the evidence the Court concludes that MUD in no way mislead nor misrepresented nor concealed any material facts from Bookcliff in regard to flooding. The evidence fully discloses that flooding in the area was not a latent or concealed factor but on the contrary was an obvious and overt condition.

The area where the majority of the construction occurred was on the north bank of the Platte River and on Cedar Island which is located in the Platte River, south of Omaha, Nebraska. All of the area is low lying and flat. While the contract did not explicitly mention the possibility of flooding and resultant risks the contract did provide that:

"3. CONTRACTOR'S DUTY TO INVESTIGATE

It is understood and agreed that the Contractor has, by investigation and by physical inspection where appropriate, informed himself as to the site of the work, the nature of the work required, the sub-soil conditions, the character of equipment and facilities needed during prosecution of the work, transportation facilities needed and available, the general and local conditions, and all other matters which may affect the work under this Contract." [Exhibit #1, pg. Gcc-2]

It is apparent that an on site inspection would have immediately revealed the possibility of flooding and that Representatives of Bookcliff did in fact investigate the site. A creek flowed through a portion of the work site and emptied into the Platte River. A portion of the area was on an island located within the Platte River. Well casings extended above the ground level and the specifications required some of the structures to be elevated.

The evidence establishes that Bookcliff's representatives were experienced contractors. As an example a dual bidding plan was used, one in the name of Bookcliff and one in the name of Korshoj Construction. By the use of this dual bid the use of union labor could be avoided. The experience extended to other cost aspects including weather. A Mr. Korshoj participated in the preparation of the Bid that was made by Bookcliff for the project. Mr. Korshoj had examined the contracts and specifications for the project but did not visit the site, stating he could tell from the plans what it looked like, and was aware of the elevations and the fact that the site was along the Platte River. Mr. Korshoj had observed the Platte River in flood conditions in previous years at points upstream. Mr. Korshoj participated on the bids as a participant in a joint venture with MUD on this project.

Moreover, the contract expressly stated that the weather conditions had been taken into consideration:

"17. DELAYS AND EXTENSION OF TIME

The CONTRACTOR expressly covenants and agrees that in undertaking to complete the work within the time herein fixed, he has taken into consid-

eration and made allowances for all of the ordinary delays and hindrances incident to such work whether growing out of delays due to weather conditions, in securing materials or workmen, or otherwise." [Exhibit 1, pg. Gcc–11].

There was no duty imposed by contract on MUD by the contract to provide flood warnings or flood protection. The dikes constructed as alleged are not shown to have aggrevated the damage, and as such have no bearing on this case, as there was no duty to construct them.

On the contrary the contract imposed a duty on Bookcliff to protect the property, providing:

"24. PROTECTION OF WORK AND PROPERTY

The CONTRACTOR shall continuously maintain adequate protection of all his work from damage, and shall protect the Utilities District's property from injury or loss arising in connection with this contract. He shall make good any such damage, injury, or loss, except such as may be directly due to errors in the Contract Documents or caused by agents or employees of the Utilities District. He shall adequately protect adjacent property as provided by law and the Contract Documents. He shall provide and maintain all passageways, guard fences, lights, and other facilities for protection required by public authority or local conditions." [Exhibit # 1, pg. Gcc–15].

■ The Court also concludes that the construction contract was an entire or indivisible contract to build an entire structure.

The contract payment schedule provides:

"18. PAYMENT SCHEDULE

After the contract has been awarded, the CONTRACTOR shall file with the Engineer a segregation of his lump sum bid into items similar to the various subdivisions of the Technical Pro-

visions, the sum of which shall equal the lump sum bid. The cost of various materials shall also be furnished upon request. This date will then be used by the Engineer as a basis for making monthly estimates.

"On or about the twentieth [20th] of each month the Engineer will make an estimate of the total work done at the project site and unused materials and equipment not installed but delivered and stored at the project site for the orderly construction of the work. After each such estimate has been approved by the Utilities District, it shall pay the CONTRACTOR on or before the fifteenth [15th] of the following month, eighty-five per cent [85%] of the amount of such estimated sum less the sum of previous payments." [Exhibit # 1, pg. Gcc–11].

It is readily apparent that the payment by installments of the lump sum bid is simply a method of payment. Further the bid was submitted as a total price for a "Well Field Collection System complete as specified and shown on the plans." [Exhibit #1, pg. CF–3]. [Plus two minor items]

■ The contract is not made divisible by the fact the system to be constructed by Bookcliff was only one component of a larger system. In fact it is much like a bridge connecting two paved highways. The fact that the highways and bridge are constructed by different parties does not make the contract divisible.

The Court also finds that the project was constructed according to plans and specifications which MUD prepared or caused to be prepared. "All work and materials furnished shall be in conformity in all respects with the Contract Documents and Plans, and any and all addenda thereto." [Exhibit #1, pg. CF–11].

This does not however, make the contract divisible. The contract simply called for a result which was to be accomplished according to plans and specifications.

## CONCLUSIONS OF LAW

This is a diversity action and Nebraska law applies. The general rules and exceptions are well stated in United States v. Spearin, 248 U.S. 132, 136, 39 S.Ct. 59, 61, 63 L.Ed. 166 [1918] by Mr. Justice Brandeis:

> "Where one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation, because unforeseen difficulties are encountered. . . . Thus one who undertakes to erect a structure upon a particular site, assumes ordinarily the risk of subsidence of the soil. . . . But if the contractor is bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications. . . . This responsibility by the owner is not overcome by the usual clause requiring builders to visit the site, to check the plans, and to inform themselves of the requirements of the work. . . ."

*Accord* Wilson & Co. v. Fremont Cake & Meal Co., 153 Neb. 160, 43 N.W.2d 657 [1950]; Bozell & Jacobs, Inc. v. Blackstone Terminal Garage, 162 Neb. 47, 75 N.W.2d 366 [1956]; Parsons Const. Co. v. Metropolitan Utilities District of Omaha, 170 Neb. 709, 104 N.W.2d 272 [1960]; State v. Commercial Casualty Ins. Co., 125 Neb. 43, 248 N.W. 807 [1933]; Fuchs v. Parsons Construction Co., 166 Neb. 188, 88 N.W.2d 648 [1958].

Thus it is apparent that if MUD is held to be liable that it would be on the basis that MUD prepared, or caused to be prepared, the plans and specifications for the project, and that these plans and specifications were defective.

The authorities cited do not squarely deal with the present factual situation. In Fuchs v. Parsons Construction Co., *supra*; and in State v. Commercial Casualty Ins. Co., *supra*, the problem was that the result obtained wouldn't accomplish the purpose intended due to defects in the plans and specifications, and there was no interim difficulties due to the elements.

In U. S. v. Spearin, *supra*, the cause of the damage was created by a latent condition which rendered the plans and specifications inadequate. In this case the condition was overt and obvious and no defect in the plans and specifications has been established.

Kehne Electric Co. v. Steenberg Construction Co., 287 Minn. 193, 177 N.W. 2d 309 [1970] is not helpful because in that case the risk of flood was explicitly set out in the contract, but the application of the clause was ambiguous.

Kansas Turnpike Authority v. Abramson, 275 F.2d 711, 713–714 [10th Cir. 1960] is cited by Bookcliff in support of its contention that the plans and specifications exception to the general rule should apply in this situation. However, that opinion was ultimately decided on the rationale that

> "[w]hether ours is an 'end result' contract or a 'specified manner and method' one depends of course upon the intention of the parties, to be gathered from its text and context. Construction by classification or categorization is rendered difficult, if not impossible, by the fact that contracts like ours call for an end result according to specifications. And so, in the last analysis, we must look to the contract by the whole of its parts to determine whether the parties actually intended to provide compensation for extra work required to be done through the fault of no one."

The Court has concluded that the risk of the flooding consequences fell on Bookcliff. In arriving at this decision the Court has fully and carefully considered the contract provisions, the overt nature of the risk, and the failure of Bookcliff to establish defects in the plans and specifications in question.

A Judgment for the plaintiff, Raymond International, Inc. and a verdict

for the third-party defendant, Metropolitan Utilities District will be entered.

The foregoing shall constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.