RICHARD H. HAYS ET AL., APPELLANTS, V. COUNTY OF DOUGLAS, NEBRASKA, APPELLEE.

223 N. W. 2d 143

Filed November 14, 1974. No. 39414.

Abrahams, Kaslow & Cassman, for appellants.

Donald L. Knowles and William T. Ginsburg, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

This is an appeal from an order of the District Court requiring the plaintiffs to file a remittitur from the amount of a judgment recovered by them against the defendant county pursuant to a jury trial, or in the event of their failure to do so, sustaining a motion for a new trial. We affirm, but modify the amount of the remittitur required.

At the trial of this action, which was one to recover damages for breach of contract, the court directed a verdict against the defendant county on the issue of liability, leaving only the amount of damages for the determination of the jury. The jury returned a verdict of $42,800, which the court found was excessive. The court thereafter ordered a remittitur in the sum of $11,594, or a new trial.

In 1967 defendant county was engaged in sponsoring and constructing a certain channel improvement project on the Little Papillion Creek, involving the widening, deepening, and straightening of part of the channel, and, in other places, the dredging out of a new channel, together with the filling in of the old channel. For the purposes of that project, it was necessary for defendant to obtain a portion of certain real estate owned by the plaintiffs and located along the Little Papillion Creek, which they were in the process of developing into a shopping area. Plaintiffs were particularly interested at that time in obtaining fill dirt for the purpose of elevating their property to a certain desired grade level. In No-

vember of 1967, a meeting was held between the plaintiffs and the county surveyor, William Green, and the project engineer, John Smith, in order to discuss the purchase of part of plaintiffs' land by the county. It was determined at that meeting that approximately 60,000 cubic yards of dirt would be required in order to raise the remainder of plaintiffs' land to the desired elevation. It also appeared that the county had considerable excess dirt as a result of prior construction on the creek project which it wished to dispose of, and therefore it appeared that it would be to the mutual advantage of the plaintiffs and the county to reach an agreement for the exchange of part of the plaintiffs' land for the dirt needed by the plaintiffs for the grading and elevation of their property. As a result of such meeting, an agreement was entered into between the parties on December 30, 1967, under the terms of which agreement plaintiffs agreed to convey to the county the land required for the channel improvement project; and as consideration for that conveyance, the county agreed to pay the plaintiffs one dollar and to "deposit approximately 60,000 cubic yards of earth from said Channel Improvement" upon the remainder of the parcel of the land owned by plaintiffs. The agreement further provided that "final grades . . . shall conform to the requirements shown on the drawings or as directed." The plaintiffs, Richard H. Hays, J. Frederic Schlott, and Willis G. Farrington, were landscape architects, practicing as a firm, and they thereafter prepared and submitted a grade plan to the county indicating the amounts of dirt fill required for different locations on their property.

It appears that plaintiffs fully performed the agreement on their part, and did convey to the county that portion of the property needed for the channel improvement project, but that the county supplied only part of the 60,000 cubic yards of dirt called for in the agreement. This point is not in dispute, and was, in

fact, stipulated to be the fact during the trial. In their petition brought in this action, in which they sought to recover damages against the county for failure to deliver the entire 60,000 cubic yards of dirt, plaintiffs alleged, among other things, that approximately 45,000 of the 60,000 cubic yards of dirt promised had not been delivered, and further alleged that the fair and reasonable price of the earth fill was 95.2 cents per cubic yard. Based upon those allegations, plaintiffs prayed judgment against the county for $42,840.

The principal issue in the case involved the determination of the amount of the dirt actually delivered and compacted upon plaintiffs' land pursuant to the contract in question. The key testimony on this issue at the trial was that of James Siebken, a civil engineer employed by Kirkham-Michael & Associates, consulting engineers. Siebken had been requested by the county to determine how much dirt had actually been deposited on the land of the plaintiffs pursuant to the contract in question. By a letter dated December 14, 1970, introduced in evidence at the trial, he indicated that he had determined a total in-place fill of only 14,763 cubic yards of dirt had been deposited thereon. However, in a subsequent letter, dated October 19, 1971, also in evidence at the trial, he indicated that the 14,763 cubic yards, previously referred to, represented only a portion of the dirt actually deposited on the property in question; and that, in fact, 30,280 cubic yards of dirt had actually been deposited. He explained the discrepancy in the figures contained in his two letters by the fact that the original figure had not included 8,531 cubic yards of dirt that had been used to fill the old creek channel located on plaintiffs' land, and abandoned as a result of the channel improvement project. The addition of that amount to the 14,763 cubic yard figure meant that, in Siebken's estimation, a total in-place quantity of 23,294 cubic yards of dirt had been added to the land. He also testified that it was then necessary to apply a "compaction factor of

1.3" in order to determine how much loose material had actually been placed on the land prior to its compaction by heavy equipment. We note in passing also that this same "compaction factor," was referred to in Knight Bros., Inc. v. State, 189 Neb. 64, 199 N. W. 2d 720 (1972). As a result of applying that factor, Siebken concluded "that it would require 30,280 cubic yards to give 23,294 cubic yards in place."

As previously stated, the District Court directed a verdict in favor of the plaintiffs on the issue of liability of the county, leaving to the jury only the issue of the amount of the damages. The verdict of the jury in the amount of $42,800 was obviously in close conformity with the calculations appearing in the petition filed by plaintiffs. It seems clear, however, that the trial court in ordering a remittitur of $11,594, was accepting the 30,280 cubic yard figure testified to by Siebken, which meant that only 29,720 cubic yards of the 60,000 cubic yards of dirt had not been delivered by the county. This is made clear by the statement of the trial judge: "In connection with the order of a remittitur, there can be no question that the jury in this case failed to take into consideration the 8,531 cubic yards of dirt put into the old channel bed which was upon the property of the Plaintiffs herein, and that they failed to give them credit for that dirt placed on their property to fill up the old creekbed." He then used a market value of $1.05 per cubic yard for dirt, and determined that the plaintiffs were only actually entitled to damages in the amount of $31,206, thereby requiring a remission by the plaintiffs of $11,594 of their original verdict in the sum of $42,800.

The law is well established that where a verdict is excessive, but not so much as to indicate passion or prejudice on the part of the jury, the error may be corrected by remittitur, if the excess can be estimated with reasonable certainty. Daly v. Publix Cars, 128 Neb. 403, 259 N. W. 163 (1935). Although we believe that a review of the record will sustain the action of the trial court in

ordering a remittitur, nevertheless we are of the opinion that the remittitur should not be as large as that ordered. We are in agreement with the plaintiffs that the 8,531 cubic yards of dirt used to fill the abandoned creek channel on plaintiffs' property should not have been considered as part of the 60,000 cubic yards of dirt called for under the agreement of the parties, and we hold this view for several reasons. In the first place the evidence of the preliminary negotiations between the parties would seem to require such a conclusion. It is uncontroverted that when the plaintiffs met with Messrs. Green and Smith in November 1967, at which time it was computed that 60,000 cubic yards of dirt would be needed for plaintiffs' purposes, the computation did not include a consideration of how much dirt would be needed to fill the abandoned creek channel. Secondly, it is significant that the grade plan submitted by the plaintiffs to the county in order to indicate the final grades needed on the land does not include any reference to the dirt needed to fill the abandoned creek channel. Finally, it is necessary to point out that the record is replete with evidence to the effect that, as part of the channel improvement project *all* abandoned creek channels along the entire extent of the project were filled. Robert Miller, one of the general contractors for the project, testified that the abandoned creek channels were filled for all the property owners along the length of the project. Kirkham-Michael & Associates had been retained as consulting engineers for the work done on the channel improvement project. James Siebken, their employee, served in the capacity of project engineer for the project; and in his testimony, he confirmed the fact that the contractor filled the abandoned creek channel along the entire project. James R. Scott, who served as representative contracting officer for the area of channel improvement project for the Corps of Engineers, testified that every time a new channel was made, they were required to fill the aban-

doned channel. On the strength of this and other evidence, we must conclude that it was not within the contemplation of the parties that the dirt necessary to fill the abandoned creek channel on plaintiffs' property would be included in the 60,000 cubic yards of dirt called for in the agreement. It was therefore error to include that amount in the calculation of the damages due to plaintiffs.

We must therefore return to the base figure originally reached by Siebken of 14,763 cubic yards of dirt. We feel that it is also necessary to apply to that amount the 1.3 compaction factor testified to by Siebken, since, as pointed out by the District Court, the testimony representing the need to apply that factor is uncontroverted. Therefore, applying the compaction factor of 1.3 to the base figure of 14,763 cubic yards, we find that 19,191.9 cubic yards of dirt were actually delivered by the county to the plaintiffs, leaving a deficiency of 40,808.1 cubic yards of dirt due under the agreement. The damages due to the plaintiffs must be calculated on the basis of this amount. We accept the price per cubic yard of 95.2 cents, as alleged in plaintiffs' petition, to be the fairest representative of the reasonable market price of fill dirt. Using that price, we conclude that the actual amount of damages due plaintiffs is the sum of $38,849.31. Such being the case, a remittitur of $3,950.69 from the verdict of $42,800 is required.

Plaintiffs also assert that the District Court erred in failing to award interest on their claim, from December 14, 1970, the date of the first Siebken letter. We have held that if the right to damages for breach of contract is a matter of reasonable litigation, and the amount to be recovered, if any, is unliquidated and must be fixed, not by mere computation but by suit, interest may not be allowed for time precedent to the settlement of the right to a recovery and the ascertainment of the amount. Smith v. Platte Valley P. P. & Irr. Dist., 151 Neb. 49, 36 N. W. 2d 478 (1949). While it is true in this case that

the right to damages was not a matter of reasonable litigation, the county having stipulated that the full amount of dirt promised under the agreement had not been delivered, nevertheless the amount of such damages was not capable of being definitely ascertained by mere computation as of December 14, 1970. On that date the parties were under the impression that only 14,763 cubic yards of dirt had been delivered. It was not until Siebken's letter of October 19, 1971, that the parties were informed a compaction factor of 1.3 would have to be applied to the figure of 14,763 cubic yards in order to determine the exact amount of the dirt deposited upon the land. Thus as of December 14, 1970, it would not have been possible to make a definite determination of the amount of damages due to the plaintiffs, even by reference to market values.

We note the claim of the county in its brief to the effect that a special statute of limitations was applicable to the claim of the plaintiffs in this action and that their failure to file their claim within 90 days from and after a time when any materials or labor which formed the basis of the claim shall have been furnished or performed bars them under section 23-135, R. R. S. 1943. We need not and do not decide this collateral matter for the reason that it is not properly before this court. This is a matter which should have been raised by cross-appeal. Rule 1 d, Revised Rules of the Supreme Court, 1974, provides: "The filing of an appeal shall vest in an appellee the right to a cross-appeal. The cross-appeal need only be asserted in appellee's brief in the manner provided by Rule 8 b 3." Also Rule 8 b 3 provides: "Where the brief of appellee presents a cross-appeal, it shall be noted on the cover of the brief and it shall be set forth in a separate division of the brief. This division shall be headed 'Brief on Cross-Appeal' and shall be prepared in the same manner and under the same rules as the brief of appellant." This was not done. We must note in passing that we have strong doubts as to whether the

requirements of section 23-135, R. R. S. 1943, apply to the facts of this case, but express no opinion with regard to it.

We believe that the remittitur ordered by the District Court was excessive in amount, and accordingly the order of remittitur is modified to require instead a remittitur of $3,950.69, and plaintiffs are to be given 10 days from and after receipt by the District Court of the mandate in this case to elect whether to file such remittitur or undergo a new trial, as provided in the order of the District Court.

AFFIRMED AS MODIFIED.