WIEBE CONSTRUCTION COMPANY, A NEBRASKA, CORPORATION, APPELLEE AND CROSS-APPELLANT, V. THE SCHOOL DISTRICT OF MILLARD, IN THE COUNTY OF DOUGLAS, IN THE STATE OF NEBRASKA, A PUBLIC CORPORATION, APPELLANT AND CROSS-APPELLEE.

255 N. W. 2d 413

Filed June 29, 1977. No. 41034.

Malcolm D. Young of Malcolm D. Young Law Offices, for appellant.

Lyle E. Strom and C. L. Robinson of Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, and WHITE, JJ.

CLINTON, J.

This is an action by Wiebe Construction Company against the School District of Millard, arising out of a contract entered into by the parties on July 22, 1969, under the terms of which Wiebe agreed to construct for the district a project identified as the Millard high school stadium at a cost price of $556,365. In accordance with provisions for changes in the contract contained therein, the contract was modified by the parties by change orders Nos. 1, 2, 3, and 4, calling for additional work and payments in the amount of $2,172.18, $2,067, and $8,553. The original contract required completion of the work within "350 consecutive calendar days" after " 'Notice to Proceed.' " The contract also provided that the contractor pay liquidated damages in the sum of $100 per day for each day of delay in performance.

Wiebe's petition contained three causes of action as follows: (1) $56,915.72 for balance unpaid on the contract price; (2) $42,042 for increased costs by reason of delay caused when problems not anticipated by the parties arose and the district and its engineers delayed in making decisions as to necessary specification changes; and (3) $1,361.21 for extra work performed in reconstruction of a sidewalk.

The district filed an answer and a counterclaim. In its answer the district alleged that Wiebe failed to complete the work properly. It denied that unanticipated conditions were encountered and alleged that in any event they should have been anticipated by the contractor. In its counterclaim the district made factual allegations, and prayed for liquidated damages at $100 per day for 224 days delay in completion of the project and for damages for certain defects in performance, including, among others, the claim that planks for certain stadium seats were not in accordance with contract specifications. Its total prayer for damages was in the sum of $62,112.65. In its reply Wiebe alleged, among other things, that the delay in construction was caused by indecision of the district's engineers and agent as to whether specification changes were required and what these changes would be.

The trial of the case began before a jury and after 5 days before the jury the parties waived a jury trial, presenting the remainder of the evidence and submitting the case to the trial judge.

The trial court entered a judgment in part as follows: ". . . the court finds generally in favor of the plaintiff and that there is due to the plaintiff from the defendant on the causes of action set forth in plaintiff's petition the sum of $44,880.68." The court also allowed interest at 6 percent from October 1, 1971, until April 30, 1976, the date of judgment, in the amount of $12,342.18. The court dismissed with prejudice the counterclaim of the district.

The district appealed to this court, here making two assignments of error: (1) The trial court erred in awarding prejudgment interest. (2) The trial court erred in not awarding liquidated damages for delay in performance. In a cross-appeal Wiebe asserted that it was entitled to the full amount of the balance on the contract, to wit, $56,915.72, instead of the $44,880.68 awarded by the court, as well as prejudgment interest on the full balance.

We will first discuss the claim of the district that it was entitled to liquidated damages for delay in performance. The entire project consisted of a football field, stadium, appurtenances, and a running track. The delay in performance arose only in connection with the running track portion of the contract. The evidence would permit the trial court to find the following. After construction was commenced a part of the site was found to be underlain with ground water and to be in a very spongy condition. When this matter was called to the attention of the engineers in November of 1969, it appeared that the condition would require a change in contract specifications and not merely more difficult work on the part of the contractor. As a consequence of this situation the engineers, in a letter dated December 18, 1969, in response to a letter from Wiebe, stated: "It would seem to us that a more reasonable approach to resolving this matter would be to wait until spring of 1970 to determine the change in the work." In a letter dated June 1, 1970, the engineers wrote to Wiebe: "We will provide you with additional details on the extra work to be performed for stabilization of the running track subgrade in the very near future." A letter from the engineers to Wiebe dated June 15, 1970, contained the following item: "6. The track stabilization detail will be made available, for construction purposes, upon the completion of all items listed above and no work should be performed on the track curb, subgrade base, etc. until these items

have been corrected." As one consequence of the water condition, change order No. 4, dated September 1, 1970, and executed by the parties a few days later, was entered into. It called for an extra in the form of a drainage system which was in fact constructed. The system was not, however, completely effective. After that there were extended discussions between the parties as to what, if any, further specification changes were required. The engineers hired a soil expert who made recommendations. Under date of September 3, 1970, a fifth change order, which was a revision of several previously proposed change orders, was offered by the district's engineers. This change order made some additional specification changes in the preparation of the subgrade of the track and also provided for an 120-day additional time extension on the contract period in addition to a 28-day extension which had been granted by one of the earlier change orders. The proposed changes in change order No. 5 were not agreed to by Wiebe because of, among other things, a claim that it could not, on the basis of the proposed specification changes, make any reasonable estimate of quantities of certain materials involved.

It is now necessary to note portions of the four change orders which were in fact adopted as these portions pertain to the "contract period." In change order No. 1 the contract period was designated as August 18, 1969, to August 3, 1970 (350 days). The second change order provided for the same contract period. The third change order stated the contract period as 378 days and contained no substantive contract changes otherwise. Change order No. 4, dated September 1, 1970, in addition to the drainage system change, provided: "Contract Period To be determined." Following change order No. 4 there were no further determinations as to what would be the contract period, but on September 15 or 16, 1970, Wiebe was instructed to proceed under the

original track specifications. On October 28, 1970, the engineers performed a test of soil conditions and it was found the ground was too wet to proceed at that time. Wiebe, however, indicated that he would proceed nonetheless if the district would accept the risk of frost damage to the track. No agreement was reached at that point. The track was completed on October 25, 1971.

The foregoing evidence would be sufficient to support a finding that the district had waived the provision for time of performance, or that the parties had modified the time for performance of the contract. A contractual provision providing for an award of liquidated damages for delay in performance may be waived. See, Hansen v. Covell, 218 Cal. 622, 24 P. 2d 772; United States v. John Kerns Constr. Co., 140 F. 2d 792; Traut-Ditmar Constr. Co. v. Hartman, 112 N. Y. S. 919, 61 Misc. 173; Edward Edinger Co. v. Willis, 260 Ill. App. 106; Rockwell v. Mountain View Electric Assn., Inc. (Colo App.), 521 P. 2d 1272. Thus dismissal of the part of the counterclaim concerning liquidated damages for delay in performance was supported by the evidence and cannot be said to be clearly wrong.

The evidence as to whether some of the work done was not in accordance with contractual specifications is to some limited extent in conflict. It presented simply a factual issue for the trial judge to determine. The court's dismissal of the counterclaim for defective work is therefore also supported by the evidence.

We now turn to the issue of the propriety of the award of prejudgment interest. The district argues that a reasonable controversy existed as to Wiebe's right to recover the contract balance and that the amount was a matter of dispute, therefore the claim was unliquidated and under the previous holdings of this court no prejudgment interest could be allowed. It cites Frank McGill, Inc. v. Nucor Corp., 195 Neb.

448, 238 N. W. 2d 894, and other opinions of this court. In the cited case, although the contract price was a fixed amount, we upheld the trial court's denial of prejudgment interest because the contract was ambiguous as to the amount of work to be done for the stated contract price and there was a factual question as to whether all the required work had been done. This, we said, made the plaintiff's right of recovery, as well as the amount, a subject of dispute, therefore the claim was unliquidated even though the jury awarded the plaintiff the exact amount of his claim.

In none of the Nebraska cases cited by the district do we have the situation which confronts us here. Wiebe, in its first cause of action, sought a sum certain fixed by the terms of the contract. The district sought to offset the amount owed by a claim for liquidated damages for delay in performance as well as by amounts for claimed defects in the performance of the work. Wiebe relies upon the proposition that where the plaintiff's claim is liquidated, the existence of an unliquidated setoff does not prevent the recovery of prejudgment interest. It cites the following authorities, among others, Raymond International, Inc. v. Bookcliff Constr., Inc., 347 F. Supp. 208, affirmed 489 F. 2d 732 (8th Cir.); Hansen v. Covell, *supra*; Fluor Corp., Ltd. v. United States ex rel. Mosher Steel Co., 405 F. 2d 823; Macri v. United States, 353 F. 2d 804; Annotation, 3 A. L. R. 809; Annotation, 89 A. L. R. 678. It seeks to distinguish Wilson Concrete Co. v. A. S. Battiato Constr. Co., 196 Neb. 185, 241 N. W. 2d 819, which cited Hays v. County of Douglas, 192 Neb. 580, 223 N. W. 2d 143, which latter case did not involve an offsetting counterclaim.

It is apparent that Wiebe's claim on its first cause of action for the balance owed on the contract is, by itself, a liquidated claim. It is the amount owed, computed in accordance with the terms of the con-

tract. The amount was disputed only because of the claims the district made in its counterclaim. Because of the limited assignments of error, the only part of the counterclaim before us on this appeal is the claim for the contractually stipulated daily damages for delay in performance. The trial judge found against the district on that part, as well as on those for defective performance.

The situation in Wilson Concrete Co. v. A. S. Battiato Constr. Co., *supra*, was similar to that before us here, that is, there was a claim by the plaintiff for a contract balance and the defendant asserted an offset by reason of defective performance. However, in that case the jury had found that certain of the materials furnished in the performance of the contract did not meet the specifications and allowed an offset. The trial court then allowed prejudgment interest on the contract balance, less the amount of the offset. A division of this court reversed that portion of the judgment, placing reliance upon Hays v. County of Douglas, *supra*. In the case here before us, the trier of fact found against the district on its counterclaim. The Hays case, on which the Wilson opinion rested, did not involve a plaintiff's liquidated claim and an offsetting counterclaim, but an ambiguous contract, and contested factual details relating to claimed nonperformance which clearly rendered the amount of recovery uncertain. In our judgment, the opinion in the Wilson case is not controlling here because (1) in the case before us the trier of fact found against the defendant on the counterclaim, and (2) it may be that the Wilson opinion's reliance upon Hays is misplaced, but we need not decide that at this time.

We hold that in an action for a liquidated sum which represents a balance owing on a contract, the amount claimed does not become an unliquidated claim merely because of the assertion of an offset, and that if the trier of fact finds against the defend-

ant on the offset, prejudgment interest should be awarded on the plaintiff's claim. In accord is Raymond International, Inc. v. Bookcliff Constr., Inc., *supra,* a diversity case in which the trier of fact was the judge, a jury being waived, and where the court was required to apply Nebraska law. There the trier of fact found against the party asserting the offset and, after pointing out that where the contract is clear and unambiguous and the defense untenable, the Nebraska Supreme Court held that prejudgment interest is to be awarded. The federal court then went on to say: "The existence of an unliquidated set-off or counterclaim does not in this case bar interest prior to the entry of judgment. Eastmount Const. Co. v. Transport Mfg. & Equip. Co., 301 F. 2d 34 [8th Cir. 1962]." In Hansen v. Covell, *supra,* cited by Wiebe, the California court has gone a bit further. It treats the offset, if allowed, as a payment and awards interest on the contract balance after deducting the offset. Whether we wish to go that far can be decided when a pertinent case reaches us. The trial court did not err in awarding prejudgment interest.

We now turn to Wiebe's cross-appeal in which it asserts that it should be awarded the full balance of the contract price in the amount of $56,915.72 instead of the $44,880.68 awarded by the court, a difference of $12,035.04. The only basis for reducing the contract balance would have been by allowing some portion of the counterclaim. This the trier of fact expressly disallowed. The general finding for the plaintiff and the disallowance and dismissal of the counterclaim cannot be reconciled with the award to the plaintiff of an amount less than the contract balance. "In a contract action, if the plaintiff has fully performed his contract he is entitled to the contract price." Rickertsen v. Carskadon, 172 Neb. 46, 108 N. W. 2d 392. Wiebe has not assigned as error disallow-

ance of the counterclaim except that part on liqui-
dated damages. This we have already treated.

The judgment is reversed and the cause remanded
for further proceedings consonant with this opinion.

REVERSED AND REMANDED.