IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 17, 2016 Session

## WORLD CLASSIC PRODUCTIONS, INC. v. RFD-TV THE THEATER, LLC, ET AL.

Direct Appeal from the Circuit Court for Davidson County
No. 07C2913     Thomas W. Brothers, Judge

_____

No. M2015-00638-COA-R3-CV – Filed March 17, 2016

_____

This appeal arises out of a breach of contract action. The plaintiff is a corporate entity that represents a musical group. The defendant is a venue owner that cancelled the show in which the musical group performed. After a bench trial, the trial court found in favor of the plaintiff and ordered the defendant venue owner to pay $195,741.86 in damages for breach of contract and $166,353.77 in prejudgment interest. The defendant appeals, arguing that the award of prejudgment interest was erroneous according to Nebraska law, which the parties chose to govern their contract. For the following reasons, we reverse and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

W. Scott Sims and David Gilbert Schuette, Nashville, Tennessee, for the appellant, RFD-TV The Theater, LLC.

Bruce H. Phillips and Sarah Kathryn Gritton, Brentwood, Tennessee, for the appellee, World Classic Productions, Inc.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

World Classic Productions, Inc. ("WCP") is a Tennessee corporation that represents a musical entertainment group known as "The Sons of Tennessee." The musical group performs primarily on horseback. Defendant RFD-TV The Theater, LLC

(the "Theater") owns and operates a musical venue in Branson, Missouri. On January 11, 2007, the Theater entered into an entertainment services agreement (the "Contract") with WCP. Pursuant to the Contract, The Sons of Tennessee would provide "[m]usical performances on stage and on horseback for the 2007 season" at the Theater, with a starting date of March 19, 2007, and an ending date of December 30, 2007. The Contract provided that the shows would last no more than 45 minutes, and The Sons of Tennessee would perform no more than ten shows per week. However, the specific show dates and times were "[t]o be determined and mutually agreed upon by both parties." The Sons of Tennessee would provide entertainment "for shows scheduled during the time period outlined above." The Contract further provided:

> While the original intent is for [WCP] to provide services through December 30, 2007, in accordance with the provisions set forth in this agreement, [the Theater] has the option to terminate the agreement on November 1, 2007, to facilitate a separate Christmas Show, if desired.

Regarding payment, the Contract provided that the Theater would pay WCP for the services provided "a guarantee of Four Hundred Forty Four Thousand Dollars ($444,000.00) for the period of April 1, 2007 through October 28, 2007 (30 weeks)." Specifically, the Theater would pay WCP $14,800 "on each Friday during the agreement." The Theater agreed to make an advance payment to WCP of $59,200 at the signing of the Contract for services provided the last four weeks of the engagement.

In the Contract, the Theater agreed to provide a climate controlled staging area and horse facility connected to its main theater for protection against the elements. The Contract acknowledged that permanent horse facilities might not be completed in time for the start of the engagement, but the Theater agreed to proceed with due diligence to provide the necessary facilities and to provide and pay for any temporary facilities that were needed to facilitate the performances. The Theater specifically acknowledged in the Contract that performing on horseback with musical instruments is a specialized act and that the group's equipment could be susceptible to damage from inclement weather elements and certain facility conditions. Accordingly, the Contract gave The Sons of Tennessee "the right to cancel a performance or performances without penalty, if in their sole judgment, proceeding with a performance would jeopardize, harm or damage equipment, animals or personnel." The Contract provided that it would be governed by and construed in accordance with the laws of the State of Nebraska, which was the location of the corporate headquarters of the Theater.

The Sons of Tennessee began performing at the Theater as agreed, but the Theater never constructed the horse facilities required by the Contract. As a result, WCP incurred expenses related to the care of the horses and sought reimbursement from the Theater.

2

However, the Theater refused to reimburse WCP for the expenses.

On July 1, 2007, the president of the Theater called a meeting with all staff and crew and announced that the show was cancelled. The Theater discontinued its weekly payments to WCP. On July 10, 2007, WCP sent a letter to the Theater notifying it that The Sons of Tennessee was ready, willing, and able to perform pursuant to the Contract. WCP claimed that the Theater had breached the Contract by terminating the show. As a result, WCP demanded its weekly fee of $14,800 for 26 weeks, spanning from July 1 through December 30, 2007, for a total of $384,800. WCP also demanded payment of $9,316.82 in expenses it incurred due to the Theater's failure to construct the horse facilities. WCP acknowledged the $59,200 advance payment it had received and deducted that sum from the total amount of damages it was claiming. In sum, WCP advised the Theater that the final amount owed was $334,916.82. The Theater did not make the payment requested in WCP's letter and claimed it had no obligation to make further payments under the Contract after it cancelled the show and performances ceased.

On October 5, 2007, WCP filed this lawsuit in Davidson County Circuit Court. The complaint named as defendants the Theater and other separate but related entities. It sought recovery based on breach of contract and/or promissory estoppel. The complaint alleged that the term of the Contract was from March 19, 2007, until December 30, 2007, and therefore, the Theater breached the Contract by cancelling the show on July 1, 2007, and discontinuing payments to WCP. WCP alleged that The Sons of Tennessee was ready, willing, and able to perform under the Contract but was not allowed to do so. WCP calculated its base damages for breach of contract in the amount of $325,600. Specifically, it calculated $14,800 for each of the weeks between July 1 and December 30, 2007 (equaling $384,800), minus the $59,200 deposit already paid. WCP claimed that it had made all necessary efforts to mitigate its damages. WCP also sought to recover $9,316.82 for expenses related to the temporary horse facilities due to the Theater's failure to construct the facilities required by the Contract. The total of these two sums was $334,916.82, the same amount demanded in WCP's previous letter to the Theater. WCP also sought an award of prejudgment interest.

The case remained pending for several years. The trial court held a bench trial from January 26 to January 29, 2015. On March 4, 2015, the trial court entered a final order entering a judgment in favor of WCP. The trial court found that The Sons of Tennessee performed every time it was requested to perform, for a total of approximately 111 shows. The court found that The Sons of Tennessee justifiably performed without their horses for approximately 9 shows due to inclement weather and another 9 or 10 shows due to the presence of larger bands on stage for guest stars. The trial court concluded that WCP did not breach the Contract and that the Theater cancelled the show due to no fault of WCP. It found that the Theater materially breached the Contract by

3

failing to construct the horse facilities, failing to reimburse WCP for its additional expenses, cancelling the show, and discontinuing its payments to WCP.

The trial court found that the Contract was for a specific term of March 19, 2007, through December 30, 2007. As for damages, the court found that the Contract obligated the Theater to pay WCP a guarantee of $444,000 for the period of April 1 through October 28, 2007, which totaled 30 weeks, at the rate of $14,800 per week. The court found that the Theater paid this weekly amount for the first 13 weeks of the Contract term but failed to pay WCP for the last 17 weeks that were guaranteed under the Contract. As a result, the court concluded, the Theater owed WCP the sum of $251,600 for the remaining weeks. However, the trial court concluded that the Theater had the unequivocal right to terminate the term of the Contract on November 1, 2007, to facilitate a Christmas show. The trial court found that the July 1 cancellation of the show effectively served as an exercise of the Theater's right to terminate the show on November 1. Accordingly, the trial court refused to calculate damages through the original term of the Contract, December 30, 2007, as originally requested by WCP.

The trial court deducted from the damage award $59,200 for the advance payment made to WCP. The trial court found that the Theater was required to reimburse WCP $9,316.82 for the expenses related to the care of the horses. The trial court found that WCP was able to mitigate its damages by procuring other employment for $2,500, but it also found that WCP incurred $4,925.04 in expenses in connection with its efforts to procure employment and that it was entitled to recover those expenses. Finally, the trial court deducted $8,400 from the damages owed to WCP due to rent expenses from which WCP was excused after the cancellation of the show. In its final calculation, the trial court awarded WCP $195,741.86 in damages for breach of contract.

The trial court also found that WCP was entitled to prejudgment interest at the rate of twelve percent per annum in accordance with Nebraska Revised Statutes section 45-104 to be calculated beginning December 31, 2007. The total amount of the prejudgment interest award was $166,353.77.

The Theater timely filed a notice of appeal to this Court and now challenges the trial court's award of prejudgment interest.

## II. ISSUE PRESENTED

The Theater presents the following issue for review on appeal:

1. Whether the trial court erred in granting prejudgment interest to Plaintiff under applicable Nebraska law.

4

For the following reasons, we reverse and remand for further proceedings.

### III. DISCUSSION

At the outset, we note the existence of a potential issue in this case involving conflicts of law. The parties' Contract provided that it was to be governed by and construed in accordance with the laws of Nebraska. Despite the parties' choice of law, however, Tennessee law governs matters of procedure under our conflict of law principles. *In re Healthways, Inc. Derivative Litig.*, No. M2009-02623-COA-R3-CV, 2011 WL 882448, at *3 (Tenn. Ct. App. Mar. 14, 2011); *Rampy v. ICI Acrylics, Inc.*, 898 S.W.2d 196, 198 n.2 (Tenn. Ct. App. 1994). Matters of procedure are governed by the law of the forum. *State ex rel. Smith v. Early*, 934 S.W.2d 655, 658 (Tenn. Ct. App. 1996). In other words, we apply our own procedural rules even if the law of another state governs the substantive issues. *See, e.g.*, *Beach Cmty. Bank v. Labry*, No. W2011-01583-COA-R3-CV, 2012 WL 2196174, at *3 n.6 (Tenn. Ct. App. June 15, 2012); *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 5 (Tenn. Ct. App. 1998).

In the trial court, WCP sought an award of prejudgment interest pursuant to Nebraska Revised Statutes sections 45-103.02 and/or 45-104. In response, the Theater argued that WCP was not entitled to prejudgment interest pursuant to the terms of the Nebraska statutes because, according to the Theater, the claim was subject to a reasonable controversy. The Theater cited Nebraska law in support of its arguments. The trial court awarded prejudgment interest to WCP in accordance with Nebraska Revised Statutes section 45-104. On appeal, neither party raises an issue regarding the trial court's decision to apply Nebraska law to the issue of prejudgment interest. Neither party argues that Tennessee law should have governed the issue. As a result, we will not review the correctness of the trial court's decision as to the applicable law. We will limit our review to the issue raised on appeal regarding whether an award of prejudgment interest was appropriate pursuant to Nebraska law.[1]

Our standard of review on appeal is a procedural matter governed by Tennessee law. *In re Healthways, Inc. Derivative Litig.*, 2011 WL 882448, at *3; *Charles Hampton's A-1 Signs, Inc. v. Am. States Ins. Co.*, 225 S.W.3d 482, 487 (Tenn. Ct. App. 2006). "An award of prejudgment interest is within the sound discretion of the trial

---

[1]We have simply confined our review to the issues presented on appeal. This decision should not be construed as a holding or implication that we consider the issue of prejudgment interest either substantive or procedural for purposes of conflicts of law. We express no opinion in that regard.

5

court[.]" *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998) (citing *Spencer v. A-1 Crane Serv., Inc.*, 880 S.W.2d 938, 944 (Tenn. 1994); *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992)).

Discretionary decisions are reviewed pursuant to the "abuse of discretion" standard of review. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). "Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision." *Id.* at 524 (internal citations omitted). Among other things, reviewing courts should review a trial court's discretionary decision to determine "whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision." *Id.* (internal citations omitted). When reviewing a discretionary decision, we "review the underlying factual findings using the preponderance of the evidence contained in Tenn. R. App. P. 13(d)" and "review the [trial] court's legal determinations de novo without any presumption of correctness." *Id.* at 525 (internal citations omitted).

According to Nebraska Revised Statutes section 45-103.02(2), except as otherwise provided, "interest as provided in section 45-104 shall accrue on the unpaid balance of liquidated claims from the date the cause of action arose until the entry of judgment." Section 45-104 then provides that, unless otherwise agreed, "interest shall be allowed at the rate of twelve percent per annum on money due on any instrument in writing[.]" Neb. Rev. Stat. Ann. § 45-104. Thus, in Nebraska,

> "The general rule is that prejudgment interest may be recovered on claims that are liquidated. A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion. *First Data Resources, Inc. v. Omaha Steaks Int., Inc.*, 209 Neb. 327, 307 N.W.2d 790 (1981). Where a reasonable controversy exists as to the plaintiff's right to recover or as to the amount of such recovery, the claim is generally considered to be unliquidated and prejudgment interest is not allowed. *Langel Chevrolet-Cadillac v. Midwest Bridge*, 213 Neb. 283, 329 N.W.2d 97 (1983)."

*Land Paving Co. v. D.A. Constr. Co.*, 338 N.W.2d 779, 780 (Neb. 1983) (quoting *Classen v. Becton, Dickinson & Co.*, 334 N.W.2d 644, 645 (Neb. 1983)). The trial court did not analyze whether a reasonable controversy existed with regard to the Theater's

liability or the amount of WCP's recovery; it simply awarded prejudgment interest without explanation. The Theater argues that a reasonable controversy existed regarding WCP's right to recover and the amount of its recovery, and therefore, prejudgment interest was inappropriate.

The Theater claims that a reasonable controversy existed regarding its liability by pointing to the fact that the trial court proceedings lasted seven years and concluded in a bench trial. However, this does not necessarily demonstrate that a *reasonable* controversy existed. "The mere contesting of the amount of or right to recovery does not alone create a reasonable controversy." *Lincoln Benefit Life Co. v. Edwards*, 243 F.3d 457, 462 (8th Cir. 2001) (citing *A.G.A. Inc. v. First Nat'l Bank*, 474 N.W.2d 655, 658 (Neb. 1991); *Wiebe Constr. Co. v. School Dist. of Millard*, 255 N.W.2d 413, 416-17 (Neb. 1977)). Indeed, "where the issue is reasonably clear, even the most spirited opposition has not precluded recovery of pre-judgment interest." *Id.* at 463 (citing *A.G.A.*, 474 N.W.2d at 658).

The Theater admitted in its answer to the complaint that its president cancelled the show on July 1, 2007. The parties agree that WCP subsequently sent a letter to the Theater indicating that The Sons of Tennessee was ready, willing, and able to perform. Before the trial court, the Theater's main arguments were that it was not subject to personal jurisdiction in Tennessee, that The Sons of Tennessee breached the contract by failing to perform with the horses on numerous dates, and that the parties' Contract was merely an unenforceable "agreement to agree," such that the Theater had no contractual liability to pay Boswell after it cancelled the show and discontinued the performances. The trial court rejected the Theater's arguments and found that The Sons of Tennessee did not breach the parties' Contract. On appeal, the Theater maintains that a reasonable controversy existed over whether The Sons of Tennessee failed to perform. We disagree. The trial court found that The Sons of Tennessee performed every time it was requested to perform but did perform without its horses when two circumstances occurred – bad weather or crowded stages. The court found that it was reasonable for The Sons of Tennessee not to bring horses on a slick stage after walking them from the temporary facilities across hundreds of feet of wet asphalt parking lot because doing so would put the performers and audience at risk. The court found that on the other dates, the stage would not accommodate the horses due to larger bands for star performers. The Contract provided that The Sons of Tennessee had "the right to cancel a performance or performances without penalty, if in their sole judgment, proceeding with a performance would jeopardize, harm or damage equipment, animals or personnel."

The trial court concluded that the Theater breached the Contract in multiple ways:

7

by failing to construct the horse facilities, failing to reimburse WCP for its expenses, cancelling the show, and discontinuing payments to WCP. The Theater did not appeal the trial court's findings of fact or its conclusions of law regarding its liability for breach of contract. Despite the Theater's spirited opposition throughout these proceedings, we conclude that it failed to demonstrate that a reasonable controversy existed regarding WCP's right to recover under the Contract.

However, this conclusion does not end the inquiry. Nebraska law also requires consideration of whether a reasonable controversy existed as to the amount of the plaintiff's recovery. The Theater argues that a reasonable controversy existed as to the amount of WCP's recovery because its July 2007 letter demanded payment of $334,916.82, its complaint sought to recover that same amount, and the trial court eventually awarded only $195,741.86. The Theater relies on the Nebraska Supreme Court's decision in *Slusarski v. Am. Confinement Sys., Inc.*, 357 N.W.2d 450, 455 (Neb. 1984), where the court affirmed the denial of prejudgment interest, simply stating, "the fact that the plaintiffs' claim for damages was in excess of $43,000, whereas the court found from the evidence that it amounted to but $28,000, would seem to establish that there was in fact a reasonable controversy on that score."

We agree with the Theater that a reasonable controversy existed regarding the amount of WCP's recovery for breach of contract. For instance, WCP sought damages of $14,800 per week from July 1 until December 30, 2007, but the trial court held that the Theater was only liable for damages through November 1, 2007. The trial court also reduced WCP's recovery by various offsets. Considering the discrepancy between the amount sought in WCP's complaint and the amount eventually awarded at trial, we conclude that a reasonable controversy existed, under Nebraska law, with regard to the amount WCP was entitled to recover.

On appeal, WCP acknowledges the trial court's finding that the Theater was entitled to various offsets against the amount owed to WCP. However, WCP argues that "these offsets do not make WCP's claim for damages unliquidated." A close reading of Nebraska law reveals otherwise. In *Wiebe Constr. Co. v. Sch. Dist. of Millard, in Douglas Cnty.*, 255 N.W.2d 413, 417 (Neb. 1977), the Nebraska Supreme Court held that "in an action for a liquidated sum which represents a balance owing on a contract, the amount claimed does not become an unliquidated claim merely because of the *assertion* of an offset, and that if the trier of fact finds *against* the defendant on the offset, prejudgment interest should be awarded on the plaintiff's claim." (Emphasis added.) Here, however, the offsets were not unsuccessfully asserted; they were deemed legitimate and deducted from the damages awarded to the plaintiff, rendering the amount awarded

significantly less than the amount sought in the complaint.

The *Wiebe* court noted that in some jurisdictions, courts have "gone a bit further" and awarded prejudgment interest on a contract balance after deducting legitimate offsets. *Id.* However, the Nebraska court declined to adopt that position, stating, "Whether we wish to go that far can be decided when a pertinent case reaches us." *Id.* The court resolved that issue in two subsequent cases and held that a successfully asserted offset renders a claim unliquidated. *See, e.g.*, *Gottsch Feeding Corp. v. Red Cloud Cattle Co.*, 429 N.W.2d 328, 334 (Neb. 1988) (affirming denial of prejudgment interest due to an offset; "While it is true that the agister proved a right to recover for the services it provided under the terms of the contract, the setoff the owner proved renders the agister's claim unliquidated."); *Langel Chevrolet-Cadillac, Inc. v. Midwest Bridge & Constr. Co.*, 329 N.W.2d 97, 102 (1983) (reversing award of prejudgment interest because the amount awarded under the contract was subject to an offset). The Nebraska Supreme Court Committee on Practice and Procedure summarizes Nebraska law on the issue as follows:

> "[I]n an action for a liquidated sum …, the amount claimed does not become an unliquidated claim merely because of the assertion of an offset, and … if the trier of fact finds against the defendant on the offset, prejudgment interest should be awarded on the plaintiff's claim." *Wiebe Constr. Co. v. School Dist.*, 198 Neb. 730, 737-38, 255 N.W.2d 413, 417 (1977). On the other hand, if the setoff succeeds, then the claim subject to the offset is unliquidated. *Gottsch Feeding Corp. v. Red Cloud Cattle Co.*, 229 Neb. 746, 754, 429 N.W.2d 328, 334 (1988), *citing Langel Chevrolet-Cadillac*, 213 Neb. at 289-90, 329 N.W.2d at 102.

1 *Neb. Prac. Series*, Nebraska Jury Instructions – Civil 2d, Ch. 4(A)(7) (2015).

We conclude that a reasonable controversy existed with regard to the amount owed by the Theater, as demonstrated by the amount sought in WCP's complaint and the trial court's calculations at trial. Consequently, under Nebraska law, WCP was not entitled to prejudgment interest.

## IV. CONCLUSION

For the aforementioned reasons, the award of prejudgment interest is hereby vacated, and the decision of the circuit court is reversed and remanded for further proceedings. Costs of this appeal are taxed to the appellee, World Classic Productions,

Inc., for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE