Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/28/2019 09:06 AM CDT

- 444 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

U.S. PIPELINE, INC., APPELLEE, V. NORTHERN
NATURAL GAS COMPANY, APPELLANT.

___ N.W.2d ___

Filed June 28, 2019.    No. S-18-679.

1.  **Trial: Witnesses: Evidence: Appeal and Error.** In a bench trial of an action at law, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony; an appellate court will not reevaluate the credibility of witnesses or reweigh testimony but will review the evidence for clear error.

2.  **Judgments: Appeal and Error.** The trial court's factual findings in a bench trial of an action at law have the effect of a jury verdict and will not be set aside unless clearly erroneous.

3.  ____: ____. In reviewing a judgment awarded in a bench trial of a law action, an appellate court considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.

4.  **Judgments: Directed Verdict: Appeal and Error.** In reviewing rulings on motions for directed verdict and judgments notwithstanding the verdict, an appellate court gives the nonmoving party the benefit of all evidence and reasonable inferences in his or her favor, and the question is whether a party is entitled to judgment as a matter of law.

5.  **Contracts: Judgments: Appeal and Error.** The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below.

6.  **Damages: Appeal and Error.** The amount of damages to be awarded is a determination solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by evidence and bears a reasonable relationship to elements of damages proved.

7.  **Contracts: Damages: Appeal and Error.** The issue of whether damages are consequential under a contract is a question of law that an

- 445 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

appellate court reviews de novo, but the factual determinations underlying such a characterization are reviewed for clear error.

8. **Expert Witnesses: Appeal and Error.** The standard for reviewing the admissibility of expert testimony is abuse of discretion.

9. **Contracts: Waiver: Damages.** Generally, a contractual waiver or exclusion of consequential damages will be upheld unless the provision is unconscionable.

10. **Contracts: Damages.** Consequential damages, as opposed to direct damages, do not arise directly according to the usual course of things from a breach of contract itself.

11. ____: ____. Direct damages refer to those which the party lost from the contract itself—in other words, the benefit of the bargain—while consequential damages refer to economic harm beyond the immediate scope of the contract.

12. **Trial: Evidence: Appeal and Error.** Unless an objection to offered evidence is sufficiently specific to enlighten the trial court and enable it to pass upon the sufficiency of such objection and to observe the alleged harmful bearing of the evidence from the standpoint of the objector, no question can be presented therefrom on appeal.

13. **Appeal and Error.** An issue not properly presented and passed upon by the trial court may not be raised on appeal.

14. ____. In order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.

15. **Waiver: Appeal and Error.** Errors not assigned in an appellant's initial brief are waived and may not be asserted for the first time in a reply brief.

16. **Trial: Directed Verdict: Appeal and Error.** In an appeal of a trial court's refusal to enter a directed verdict, the appellate court should consider solely those grounds urged by the appellant to the trial court in support of its directed verdict motion.

17. ____: ____: ____. If a party fails to set forth certain arguments as grounds in a motion and renewed motion for directed verdict, such arguments will not be properly preserved for appeal.

18. **Contracts: Waiver.** The determination of whether a contractual provision has been waived is a factual determination.

19. **Contracts: Waiver: Damages.** A contractual provision for liquidated damages for delay in performance may be waived.

20. **Waiver: Estoppel.** In order to establish a waiver of a legal right, there must be clear, unequivocal, and decisive action of a party showing such purpose, or acts amounting to estoppel on his or her part.

- 446 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

21. **Contracts: Waiver: Proof.** A written contract may be waived in whole or in part, either directly or inferentially, and the waiver may be proved by express declarations manifesting the intent not to claim the advantage, or by so neglecting and failing to act as to induce the belief that it was the intention to waive.

22. **Contracts: Waiver.** Even a provision in a written contract that specifies that a waiver of the conditions and terms of the agreement must be in writing may be waived by acts or conduct.

Appeal from the District Court for Douglas County: Timothy P. Burns, Judge. Affirmed.

Gregory C. Scaglione, J. Daniel Weidner, Minja Herian, Michele E. Young, and Cassandra M. Langstaff, of Koley Jessen, P.C., L.L.O., for appellant.

Shawn D. Renner and Richard P. Jeffries, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., and Barrett H. Reasoner, Ayesha Najam, and Ross M. MacDonald, of Gibbs & Bruns, L.L.P., for appellee.

Heavican, C.J., Cassel, Stacy, Funke, and Freudenberg, JJ.

Freudenberg, J.
## I. NATURE OF CASE
In 2014, a natural gas company solicited bids for a pipeline replacement and relocation project in northern Michigan. The natural gas company accepted a bid from a pipeline company, and the parties entered into a detailed construction contract. The contract provided that the project would be substantially completed by September 2014. However, because of extra work orders by the natural gas company and for various other reasons, the project was not substantially completed by that date. Based on a liquidated damages provision in the contract, the natural gas company withheld the maximum amount of liquidated damages allowable under the contract for the delay in the project's completion. The natural gas company also refused to pay certain costs requested by the pipeline company

- 447 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

related to the extra work orders. At the center of the lawsuit is whether the natural gas company should pay for the costs associated with the extra work and be allowed to withhold liquidated damages.

## II. FACTS

### 1. Pleadings

In January 2016, U.S. Pipeline, Inc., a corporation engaged in the business of constructing oil and gas pipelines and related energy infrastructure facilities, filed a complaint in the district court for Douglas County against Northern Natural Gas Company (Northern), a corporation headquartered in Omaha, Nebraska, and engaged in the business of providing natural gas transportation and storage services. U.S. Pipeline sought compensation under a pipeline replacement and relocation project contract for costs incurred to perform work that was outside of the original contract price (Extra Work). U.S. Pipeline sought relief under a breach of contract theory, as well as alternative theories, including claims for misrepresentation and fraudulent concealment.

In response to U.S. Pipeline's amended complaint, Northern's answer and counter-complaint denied that it owed U.S. Pipeline any compensation for the Extra Work and resources U.S. Pipeline did not anticipate and denied any liability to U.S. Pipeline for U.S. Pipeline's low bid. Northern's counter-complaint further alleged that pursuant to the contract, U.S. Pipeline materially missed the substantial completion date and overbilled Northern for the work it performed. Based on this and a liquidated damages provision within the parties' contract, Northern sought a declaratory judgment upholding Northern's decision to withhold payment of $351,000 from U.S. Pipeline as liquidated damages. Northern also sought a declaration from the district court upholding Northern's withholding of $320,000 in payment from U.S. Pipeline as a credit for U.S. Pipeline's change in the construction plan that resulted in a cost savings.

- 448 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

### 2. Summary Judgment

Prior to trial, the court granted Northern partial summary judgment on the issue of whether U.S. Pipeline is entitled to indirect or consequential damages. The district court found that U.S. Pipeline admitted that it is not seeking damages for "indirect or consequential damages." The district court overruled Northern's motion for summary judgment on the remaining issues.

### 3. Motions for Directed Verdict

A bench trial was held pursuant to a jury waiver contained in the parties' contract. At the close of U.S. Pipeline's case, Northern moved for a directed verdict, asserting that (1) U.S. Pipeline's damages were barred by the consequential damages waiver and (2) there was no genuine issue of fact on U.S. Pipeline's misrepresentation/fraudulent concealment claims regarding "geotechnical information." The court denied the motion. Northern later renewed the motion at the close of all the evidence, adding no further new grounds, and the court again denied the motion.

### 4. Bench Trial

The following evidence was adduced during the parties' 2-week bench trial.

### (a) Bidding and Northern's Original Project Plans

In 2013, Northern decided to replace or relocate approximately 29,450 feet, or 5.58 miles, of its Marquette main line (Marquette Replacement) and approximately 8,000 feet, or 1.52 miles, of its Ishpeming branch line (Ishpeming Relocation) (collectively the Project), both located in the Upper Peninsula of Michigan.

Northern designers prepared drawings for the Project. Northern's construction drawings called for the installation of new underground piping using open-cut installation and horizontal directional drilling (HDD) techniques. Generally,

- 449 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

underground pipeline is installed through either an open-cut process or HDD. For an open-cut installation, a trench is excavated and the pipe is placed in the bottom of the trench and covered. An HDD, in contrast, is a steerable, trenchless method of installing underground pipe in an arc along a prescribed bore path by using a surface-launched drilling rig. HDD drilling is more complicated and expensive to install.

Specifically, Northern's construction drawings called for six HDD's—four locations along the Marquette Replacement (including the "Highway 476/Ely Creek" crossing) and two HDD's on the Ishpeming Relocation (including the "Cliffs Road" crossing). In addition, each set of Northern's drawings specified an arc radius of 525 feet on the 12-inch-diameter pipeline and 600 feet on the 6-inch-diameter pipeline. A governmental permit was granted for these specifications. The design arc radius or design radius of curvature is the radius of directional changes along the drill path. The arc radius is determined by several factors, including the desired distance between entry and exit points, the desired drill depth, direction changes for the drill path, and how much the drill stem and installed pipe can bend without being damaged.

In March 2014, Northern opened the bid process for the Marquette Replacement and Ishpeming Relocation. Northern issued notice of a mandatory onsite, pre-bid meeting and route inspection to be held on May 13 and 14, 2014. One of the purposes for the route inspection was to walk the pipeline route to provide bidders a better understanding of the site conditions, project layout, and access issues. Three prospective bidders and their subcontractors, along with Northern representatives, attended the pre-bid meeting and route inspection.

U.S. Pipeline sent Kris Osborn to represent U.S. Pipeline at the meeting and route inspection. Osborn drove to the pipeline on May 13, 2014, but he did not walk the route like other bidders. The meeting and route inspection continued on May 14, but Osborn did not attend. U.S. Pipeline's representative who created its bid for the Project confirmed that he was informed

that Osborn did not walk the pipeline route with the other bidders and Northern's representatives.

Northern used an online bid communication portal called Ariba to receive and transmit bid information to the interested bidders. Northern posted a summary of the meeting and route inspection on Ariba. Northern also posted the bid drawings, a form contract, the scope of work, questions and answers from bidders, meeting and route inspection notices, and summaries of meetings and inspections. U.S. Pipeline accessed the information posted on Ariba.

Among the questions and answers posted on Ariba during the pre-bid phase included a bidder's request that Northern "provide geotechnical information associated with the original 12″ MIM10101 installation." Northern responded by stating, "No geotechnical information associated with the original 12 inch MIM10101 is available." Broadly, geotechnical information is information about the geology and the estimated amount of rock in an area. This type of information provides insight as to the type of blasting that may be required for a drilling project.

Another question posted on Ariba inquired:

Without any geotechnical information, it is difficult at best to determine how much blasting, rock shield, or import padding to include in the bid.

a. How many CY of ROW blasting does [Northern] want the Contractor to include in the bid?

b. How many LF of ditch blasting does [Northern] want the Contractor to include in the bid?

Northern replied, "[Northern] cannot speculate on the quantity and amount of blasting required for the [P]roject. The onsite visit was designed to familiarize bidders with the site conditions and bid accordingly."

In connection with its proposed work on the Project, Northern submitted "Resource Report No. 6" with the Federal Energy Regulatory Commission (FERC), the commission in charge of interstate pipeline construction and installation projects.

- 451 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

Compiled by an environmental consultant, Resource Report No. 6 estimated that excavators would encounter "approximately 3.77 miles" of "shallow bedrock that may require blasting" along the portion to be replaced on the Marquette main line. Although Resource Report No. 6 was publicly available as part of Northern's FERC filings, Northern did not post a copy of Resource Report No. 6 to Ariba. The contract eventually entered into with U.S. Pipeline, however, expressly advises that "[e]xtensive rock structures occur throughout the area."

In order for geotechnical information to be obtained, a "geotechnical survey" or investigation must be done. A "geotechnical survey" consists of taking exploratory borings to collect soil samples for classification and laboratory analysis. In creating Resource Report No. 6, Northern did not take or analyze bore samples from the Project site. Rather, the report discussed "geological data," which is information that is publicly available from various sources, including a national resource bank of soil and rock information in the area.

U.S. Pipeline and two other companies placed bids on the Project. Northern ultimately awarded the bid for both the Marquette Replacement and Ishpeming Relocation to U.S. Pipeline. U.S. Pipeline and Northern signed the contract at issue on July 24 and August 1, 2014, respectively.

(b) Contract

Under the contract, U.S. Pipeline agreed to fabricate, test, dewater, dry, and install approximately 29,450 feet (5.58 miles) of 12-inch-diameter pipeline for the Marquette Replacement and 8,000 feet (1.52 miles) of 6-inch-diameter pipeline for the Ishpeming Relocation. U.S. Pipeline and Northern agreed on a lump-sum price of $15,312,050 for the completion of the Project. Pursuant to the contract, the substantial completion date for the Project was September 24, 2014. The parties expressly agreed that time was of the essence.

The contract for the Project also provided that liquidated damages due to delayed completion of the Marquette

- 452 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

Replacement were to be set at $11,700 per day beyond the substantial completion date, with a cap of $351,000. The Ishpeming Relocation had a similar liquidated damages provision, but it did not become applicable.

Both parties agreed to a mutual waiver of indirect or consequential damages under the contract. The waiver's language defines consequential damages as

"INCLUDING BUT NOT LIMITED TO LOSS OF PROFIT, BUSINESS INTERRUPTION, LOSS OF REVENUE, LOSS OF USE, LOSS OF CONTRACT, LOSS OF THROUGHPUT, LOSS OF GOODWILL, INCREASED COST OF WORKING OR LOSS OF BUSINESS OPPORTUNITY[.]"

The contract also contained provisions related to the omission of contractually required work or performance of additional work not specified under the contract, referred to as "Extra Work," under the contract:

[Northern] may omit work, or may require [U.S. Pipeline] to perform additional work or furnish additional materials or equipment, or the use thereof, in connection with the Work, which are not included in this Agreement (hereinafter referred to as "Extra Work"). Extra Work may be occasioned by material changes in Plans and Specifications or project lay out requiring additional work or materials of a different nature, kind and cost from that contemplated at the time of execution of this Agreement . . . .

All requests for Extra Work must be prepared by [U.S. Pipeline] in the form attached as Exhibit "L" and approved in writing in advance by the [Northern] Representative or [Northern] Vice President of Operations. Such requests shall describe the work to be done and specify the compensation requested therefor . . . .

With regard to payment for any Extra Work incurred, the contract set forth a payment schedule referred to as the "Force Account Work basis." The provisions regarding payment for

- 453 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

Extra Work incurred or work reduced from the contract are as follows:

In the event unit prices as set forth in Part IV, or other agreed upon rates, are not applicable to any Extra Work, such work shall be paid for on the following basis, hereinafter referred to as the Force Account Work basis . . . .

(i) [U.S. Pipeline's] actual field payroll plus fifteen percent (15%) thereof for overhead and profit, plus [U.S. Pipeline's] actual contribution or payment for insurance coverage, to the extent such are not subject to [Northern] provided insurance coverage, rated on basis of payroll, together with Social Security and unemployment tax or other employer's tax contribution based on payroll, plus cost of union benefits; and

(ii) Actual material costs, as evidenced by invoices from original suppliers or vendors showing [U.S. Pipeline] as purchaser, plus five percent (5%) thereof for [U.S. Pipeline's] overhead and expenses, plus any applicable sales or use taxes assessed and paid in conjunction with such material purchases; and

(iii) Charges for the actual use of equipment, including leased equipment, in accordance with the rate schedule set forth in [the Contract] or other agreed to rates included with the Contract Documents; and

(iv) Charges for third party equipment or services as evidenced by their invoices, plus five percent (5%) thereof.

All such billings for work on the Force Account Work basis shall comprise the total of charges accumulated under (i) through (iv) above and be supported by certified daily payroll records initialed by the [Northern] Representative, a detailed list of material used, and any third party invoices.

. . . .

If changes in the Drawings, reports, or Plans and Specifications cause a decrease in [U.S. Pipeline's] cost or

- 454 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

time required for the completion of the Work, [Northern], by written notice to [U.S. Pipeline], may make a fair and proportionate adjustment therefor in [Northern's] compensation to [U.S. Pipeline] and time allowed to complete the Work.

If an Extra Work Request decreases the amount of Work to be done, such decrease shall not constitute the basis for a claim for damages or anticipated profits for Work affected by such decrease. [U.S. Pipeline's] compensation shall be reduced to reflect the reduction in Work.

The same section of the contract also provided that U.S. Pipeline would not be entitled to submit a claim for Extra Work or costs, expenses, or time to complete its contractual obligations for delay or inefficiencies arising from U.S. Pipeline's failure to carefully examine or inspect the sites or their conditions, the contract, and other various documentation.

### (c) Revision to Open Cut for
### Ishpeming Relocation

At some point during the course of the Ishpeming Relocation, Northern decided to cancel the HDD of the Cliffs Road crossing and instead switch to an open cut. U.S. Pipeline agreed to the alteration but declined Northern's request for a credit on the difference between the HDD and an open cut. Nevertheless, on their final payment, Northern withheld $320,000 from U.S. Pipeline as a credit for U.S. Pipeline's cost savings attributable to performing an open cut at Cliffs Road instead of a more costly HDD bore.

### (d) Revisions for Highway 476/Ely Creek
### HDD Bore for Marquette Replacement

In the course of the Marquette Replacement, Northern revised and redesigned the specifications for the Highway 476/Ely Creek HDD bore related to the Marquette Replacement.

- 455 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

### (i) Redesign of Highway 476/Ely Creek HDD

Heavy rains had flooded a nearby wetland and increased its size via natural accretion. As a result, Northern became concerned that its original design for the Marquette main line would place the exit and entry points of the HDD too close to a wetland. Northern decided that it would need to revise the design for the Highway 476/Ely Creek HDD bore of the Marquette Replacement.

The Highway 476/Ely Creek HDD revision extended the bore entry point beyond the swollen wetland and moved the exit point past a steep grade. Northern received FERC approval for the variance request regarding the Highway 476/Ely Creek HDD.

Northern sent the revised Highway 476/Ely Creek HDD bore specifications to U.S. Pipeline on October 1, 2014. U.S. Pipeline began drilling the Highway 476/Ely Creek HDD in mid-October 2014.

### (ii) Revision Due to Power Lines

On October 3, 2014, during the Marquette Replacement, Northern submitted a request to FERC to make another revision to the Highway 476/Ely Creek Crossing HDD plans. Despite Northern's having previously approved an open cut beneath power lines along the Marquette Replacement, a utility company objected to Northern's original design. The utility company required Northern to either change the route of the open cut to be further away from power lines or use an HDD method (Power Line HDD). To accommodate the power lines, Northern again revised and redesigned its initial designs to reflect using the HDD method rather than an open cut at this location. Northern submitted these altered plans to FERC, and FERC approved the revision.

### (e) Change Orders

U.S. Pipeline submitted "Change Order 14," regarding the Power Line HDD, and "Change Order 15," regarding Highway 476/Ely Creek, to Northern on October 6, 2014. Both change

orders were in the form that was referred to in the contract as "Exhibit L." Northern approved Change Orders 14 and 15 the following day. Change Orders 14 and 15 cite "Southeast Directional Drilling personnel and equipment" as the reason for the added cost components. Southeast Directional Drilling was the HDD subcontractor used by U.S. Pipeline on the Project.

Additional time was not specifically requested in Change Order 14 or 15, nor were additional expenses for U.S. Pipeline specifically set forth in Change Order 14 or 15. U.S. Pipeline merely specified that a "lump sum" method of payment would be utilized to cover the subcontractor's charges for the requested Extra Work. Northern's construction coordinator on the Project admitted at trial that the work described in Change Orders 14 and 15 constituted Extra Work under the contract.

Following Northern's approval of Change Orders 14 and 15, U.S. Pipeline and its subcontractor signed a subcontract for the Extra Work, and the subcontractor mobilized to the Project site.

The day before U.S. Pipeline began working on the Extra Work, U.S. Pipeline submitted "Change Order 19" to Northern. Change Order 19 pertained to the costs U.S. Pipeline anticipated incurring as a result of having to retain extra crews and equipment for the Extra Work on the Highway 476/Ely Creek and Power Line HDD bores. Using the Force Account Work basis payment method pursuant to the contract, U.S. Pipeline estimated the additional cost of the Extra Work but did not specifically indicate that U.S. Pipeline sought additional time for the task schedule or the substantial completion date.

After receiving Change Order 19 from U.S. Pipeline, Northern gave U.S. Pipeline final approval to begin the Power Line HDD. When the Extra Work on Highway 476/Ely Creek and the Power Line HDD bores commenced, Northern knew U.S. Pipeline expected additional compensation for the Extra Work. At this point, Northern also knew that the Project was already past the substantial completion date.

- 457 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

After the work commenced, in an email on October 24, 2014, Northern disputed U.S. Pipeline's numbers in Change Order 19. Northern suggested that U.S. Pipeline "submit a more equitable work change order that truly reflects the additional costs." U.S. Pipeline stated that it would resubmit Change Order 19 once the HDD's were completed to reflect actual costs. Northern did not respond to U.S. Pipeline's offer to resubmit Change Order 19.

In December 2014, Northern and U.S. Pipeline agreed to meet at Northern's headquarters in Omaha to discuss several disputed and outstanding change orders, including Change Order 19. At the meeting, U.S. Pipeline provided documentation detailing its growing additional costs that related to the HDD Extra Work at issue in Change Order 19. Although the parties reached agreements regarding other various disputed change orders that are not the subject of this litigation, the parties were unable to reach an agreement on Change Order 19.

(f) Completion of Project

The last HDD was completed on December 16, 2014. U.S. Pipeline then proceeded with the remaining "original scope of work" included in the contract. For the Marquette Replacement, this work included hydrotesting the final bore pipe sections, drying the pipeline, performing the final tie-in welds on both sides of the bore, coating the welds, and backfilling.

While U.S. Pipeline worked toward completing the Project, Northern representatives supervised U.S. Pipeline's progress. It is undisputed that U.S. Pipeline did not substantially complete the Marquette Replacement until February 12, 2015. U.S. Pipeline issued its completion affidavit on August 21.

The Extra Work added nearly 1,200 feet to the Highway 476/Ely Creek crossing and a 500-foot bore for the Power Line HDD. The Extra Work, combined with severe winter conditions, delayed substantial completion of the Marquette Replacement by approximately 120 calendar days.

- 458 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

(g) Supplements to Change Order 19

On May 22, 2015, U.S. Pipeline submitted Change Order 19, "Supplement 1," to Northern as Northern had requested in its October 24 response to U.S. Pipeline's original Change Order 19 request. Supplement 1 cited an "increase in the cost and time required for performance of the Work" due to the Extra Work on Highway 476/Ely Creek and the Power Line HDD. Supplement 1 requested delay and inefficiency damages of $7,740,138.75. Northern reviewed and rejected U.S. Pipeline's Supplement 1, determining that U.S. Pipeline's formula for costs was inaccurate and that certain items were missing.

After Northern rejected Supplement 1, U.S. Pipeline submitted Change Order 19, "Supplement 1A," on July 16, 2015. Supplement 1A cited "additional compensation and time for performance of that changed Work" and requested delay and inefficiency damages of $6,729,980.79. After conducting an audit of U.S. Pipeline's records, Northern again rejected U.S. Pipeline's Supplement 1A.

(h) Payment

After making adjustments on other disputed change orders, Northern paid $17.3 million dollars to U.S. Pipeline, less $671,000 that it withheld for liquidated damages ($351,000) and a credit for the lower costs associated with the Cliffs Road modification ($320,000). U.S. Pipeline acknowledged that it underbid the Project, even with factoring in the wrong estimate of rock, and suffered a loss of $11.3 million.

*(i) U.S. Pipeline's Expert Testimony Regarding Delay Attributions and Damages*

In addition to the evidence presented to establish the facts set forth above, U.S. Pipeline offered expert forensic testimony for the computation of damages under its breach of contract claim. U.S. Pipeline's expert was William Berkowitz, a senior managing director in the construction solutions practice of a consulting firm, with an extensive background in forensic schedule and productivity analysis.

The general subject of Berkowitz' testimony related to U.S. Pipeline's breach of contract claim for Northern's failure to pay for the Extra Work associated with Northern's requested HDD redesigns. At the beginning of this testimony, Northern objected to U.S. Pipeline's expert testimony on the basis of relevance under Neb. Evid. R. 401 and 403. Northern also objected on parol evidence grounds. The court overruled Northern's objections. At the request of Northern, the trial court granted Northern a standing objection on these grounds as to the entirety of Berkowitz' testimony.

Berkowitz testified that he used the Force Account Work basis found within the contract to calculate the costs and damages associated with the Extra Work. Berkowitz testified that he calculated the increased costs associated with the Extra Work to total $5,275,506.01. Berkowitz' report notes that this amount represents the added delays and inefficiencies related to the addition of the Extra Work from October 2014 through February 2015. In his calculations, Berkowitz found that there was a total delay of 141 days to the substantial completion date. Of these 141 days, he computed that 123 of these days were attributed to Northern's HDD redesign and therefore compensable to U.S. Pipeline. The 18 days of delay that Berkowitz attributed to U.S. Pipeline were due to a late start of construction and late mobilization of U.S. Pipeline's subcontractor.

In calculating damages, Berkowitz used a multistep process. First, he determined the actual schedule impact of the Extra Work, comparing the parties' original schedule to the schedule that actually occurred. Berkowitz then quantified which costs were attributable to the addition of the Extra Work, as opposed to costs that would have otherwise occurred. Again, in doing so, he testified that he utilized the Force Account Work basis from the parties' contract. Lastly, Berkowitz testified that he deducted payments that were actually made by Northern during the Project. Berkowitz did not include any costs associated with U.S. Pipeline's claims for negligent misrepresentation or

- 460 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

fraudulent concealment regarding geotechnical information in his damages analysis.

Berkowitz testified that in his analysis quantifying which costs were attributable to each party, he separated U.S. Pipeline's costs into two categories: "delay costs" and "inefficiency" costs, or "unproductive work"/"downtime" costs. In his testimony, Berkowitz specifically defined "delay costs" as time-related costs for activities and materials that must continue for the entire duration of a project and are not necessarily task specific, such as supervision, temporary heating, and fuel costs. Berkowitz defined "inefficiency costs" or "unproductive work/downtime" as costs stemming from tasks that took longer or were more expensive because of Northern's design changes and U.S. Pipeline's having to continue its labors on the Project amidst the intemperate Michigan winter. These additional costs, Berkowitz asserted, were largely a result of the Extra Work. His testimony and report supported this conclusion, finding in his analysis that most construction was completed by the time Northern finally told U.S. Pipeline to move forward with the redesigned projects. While Northern cross-examined Berkowitz concerning his calculations under the Force Account Work basis, Northern did not object to Berkowitz' testimony on foundation grounds.

Berkowitz' final opinion was that, applying the Force Account Work basis as set forth in the contract, U.S. Pipeline incurred a total of $5,275,506.01 in costs related to performing the HDD Extra Work.

### (ii) Northern's Expert Testimony Regarding Delay Attributions and Damages

Northern offered contrary expert testimony from a consultant for construction disputes, Anthony Gonzales. Like Berkowitz, Gonzales testified that the delays for the Project totaled 141 days. However, Gonzales opined that these delays were entirely attributable to U.S. Pipeline. Gonzales did not address the accuracy of Berkowitz' calculations for the 123

- 461 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

days Berkowitz testified were attributable to Northern's HDD redesign on the contract's Force Account Work basis.

Gonzales testified that solely U.S. Pipeline's own actions or inactions prevented it from maintaining its productivity throughout the Marquette Replacement portion of the Project. Gonzales concluded that as a result, U.S. Pipeline is responsible for at least $351,000 in liquidated damages per the liquidated damage provision in the contract and U.S. Pipeline was not entitled, under the terms of the contract, to any damages for the Extra Work. However, Gonzales noted that if the contract were not followed, Northern might be responsible for $345,700 in damages to U.S. Pipeline for 20 days of delay attributable to Northern's HDD redesign and subsequent Extra Work.

### 5. District Court Order

Following the conclusion of the bench trial, the district court awarded judgment in favor of U.S. Pipeline on its claim for breach of contract against Northern. Noting that Berkowitz' methodology and calculations were credible and reliable, the court adopted Berkowitz' calculation of costs associated with the Extra Work based on the Force Account Work basis. The district court summarized Berkowitz' testimony as follows:

> Berkowitz calculated the increased costs associated with the Extra Work to total $5,275,506.01. . . . This amount represents the added delays and inefficiencies which attended the Extra Work from October 2014 through February 2015. The delay costs stem from the fact that by the time [Northern] authorized the Extra Work, [U.S. Pipeline] had largely completed its work on the Project. But for the Extra Work, [U.S. Pipeline] could have significantly reduced its workforce on site and completed the Project by the end of October. The inefficiency costs stem from [U.S. Pipeline] having to continue its labors on the Project amidst the intemperate Michigan winter which slowed its progress. But for the Extra Work,

- 462 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

[U.S. Pipeline] would not have had to contend with winter conditions.

The court also partially granted Northern's request for a declaratory judgment, stating that Northern was justified under the contract to withhold payment from U.S. Pipeline as a credit for U.S. Pipeline's cost savings attributable to performing an open cut at the Cliffs Road crossing instead of a more costly HDD. However, the court awarded U.S. Pipeline $23,729.06 after it found that the proper amount attributable to such cost savings was $296,270.94 and not $320,000.

Regarding liquidated damages, the district court found that Northern improperly withheld $351,000 in liquidated damages per the contract cap due to delays beyond the substantial completion date. The court concluded that Northern waived its rights to these liquidated damages under the contract, because Northern failed (1) to indicate that the liquidated damages clause would still be enforced even after requesting Extra Work and (2) to send the revised plans for the Extra Work until October 1, 2014, after the substantial completion date. As a result, Northern's request for a declaratory judgment declaring that it had a right under the contract to withhold $351,000 from U.S. Pipeline as liquidated damages was denied.

U.S. Pipeline was awarded damages in the amount of $5,275,506.01 for the Extra Work it performed, and an additional $374,729.06 ($351,000 + $23,729.06) for the amount Northern wrongly withheld, for a total damage award of $5,650.235.07. The court dismissed the remainder of both parties' claims with prejudice.

### III. ASSIGNMENTS OF ERROR

Northern assigns that the district court erred in (1) awarding U.S. Pipeline consequential damages on its breach of contract claim, because the contract prohibits such recovery; (2) denying Northern's motion for directed verdict; (3) admitting and failing to strike the testimony of U.S. Pipeline's expert witness that included damages for certain work and conditions

- 463 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

that were expressly assumed by U.S. Pipeline or barred under the contract; and (4) dismissing Northern's claim for liquidated damages.

## IV. STANDARD OF REVIEW

[1] In a bench trial of an action at law, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony;[1] an appellate court will not reevaluate the credibility of witnesses or reweigh testimony but will review the evidence for clear error.[2]

[2] Similarly, the trial court's factual findings in a bench trial of an action at law have the effect of a jury verdict and will not be set aside unless clearly erroneous.[3]

[3] In reviewing a judgment awarded in a bench trial of a law action, an appellate court considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.[4]

[4] In reviewing rulings on motions for directed verdict and judgments notwithstanding the verdict, we give the nonmoving party the benefit of all evidence and reasonable inferences in his or her favor, and the question is whether a party is entitled to judgment as a matter of law.[5]

[5] The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below.[6]

---

[1] *Hooper v. Freedom Fin. Group*, 280 Neb. 111, 784 N.W.2d 437 (2010).

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *First Express Servs. Group v. Easter*, 286 Neb. 912, 840 N.W.2d 465 (2013).

[6] *Davenport Ltd. Partnership v. 75th & Dodge I, L.P.*, 279 Neb. 615, 780 N.W.2d 416 (2010).

- 464 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

[6] The amount of damages to be awarded is a determination solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by evidence and bears a reasonable relationship to elements of damages proved.[7]

[7] The issue of whether damages are consequential under a contract is a question of law that we review de novo,[8] but the factual determinations underlying such a characterization are reviewed for clear error.[9]

[8] The standard for reviewing the admissibility of expert testimony is abuse of discretion.[10]

## V. ANALYSIS

### 1. CONSEQUENTIAL DAMAGES

Northern contends that the district court erred in denying Northern's motion for directed verdict and by entering judgment in favor of U.S. Pipeline for $5,275,506.01, which it describes as being an award of consequential damages. Northern argues that the court erred in denying its original and renewed motions for directed verdict and in awarding "consequential" damages to U.S. Pipeline, because the parties agreed to a mutual waiver of consequential damages within their contract.

The underlying issue of Northern's first two assignments of error relates to the proper characterization of the damages awarded. Stated differently, the central question is whether any portion of the damages awarded by the district court was consequential damages. The issue of whether damages are

---

[7] *McDonald v. Miller*, 246 Neb. 144, 518 N.W.2d 80 (1994).

[8] *SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, 841 F.3d 827 (10th Cir. 2016); *Carnell Const. Corp. v. Danville Redevelopment*, 745 F.3d 703 (4th Cir. 2014); *Chestnut Hill Dev. Corp. v. Otis Elevator Co.*, 739 F. Supp. 692 (D. Mass. 1990); *Richmond Medical Supply v. Clifton*, 235 Va. 584, 369 S.E.2d 407 (1988). Cf. *Adams v. American Cyanamid Co.*, 1 Neb. App. 337, 498 N.W.2d 577 (1992).

[9] See, generally, *Hooper v. Freedom Fin. Group, supra* note 1.

[10] *State v. Hill*, 288 Neb. 767, 851 N.W.2d 670 (2014).

- 465 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

consequential under a contract is a question of law that we review de novo,[11] but the factual determinations underlying such a characterization are reviewed for clear error.[12] In a bench trial of an action at law, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony.[13] Similarly, the trial court's factual findings in a bench trial of an action at law have the effect of a jury verdict and will not be set aside unless clearly erroneous.[14] We find that the damages alleged by U.S. Pipeline and awarded by the district court were properly characterized as direct damages and were not consequential damages.

[9] Nebraska courts have consistently upheld the right of contracting parties to privately bargain for the amount of damages to be paid in the event of a breach of contract.[15] This court has explained that "'parties to a contract may override the application of the judicial remedy for breach of a contract'" by bargaining in advance over the amount or type of damages to be paid in the event of breach.[16] Many jurisdictions apply this principle to waivers of consequential damages, as these contractual provisions that purport to waive consequential damages seek to carve out a specific category of damages for which recovery is denied.[17] Generally, a contractual waiver

---

[11] *SOLIDFX, LLC v. Jeppesen Sanderson, Inc., supra* note 8; *Carnell Const. Corp. v. Danville Redevelopment, supra* note 8; *Chestnut Hill Dev. Corp. v. Otis Elevator Co., supra* note 8; *Richmond Medical Supply v. Clifton, supra* note 8. Cf. *Adams v. American Cyanamid Co., supra* note 8.

[12] See, generally, *Hooper v. Freedom Fin. Group, supra* note 1.

[13] *Id.*

[14] *Id.*

[15] See, *Reichert v. Rubloff Hammond, L.L.C.*, 264 Neb. 16, 645 N.W.2d 519 (2002); *Crowley v. McCoy*, 234 Neb. 88, 449 N.W.2d 221 (1989).

[16] See *Reichert v. Rubloff Hammond, L.L.C., supra* note 15, 264 Neb. at 24, 645 N.W.2d at 527.

[17] See 6 Philip L. Bruner & Patrick J. O'Connor, Jr., Bruner and O'Connor on Construction Law § 19:55 (2012). See, also, *Adams v. American Cyanamid Co., supra* note 8.

- 466 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

or exclusion of consequential damages will be upheld unless the provision is unconscionable.[18]

The parties do not dispute the existence of the waiver of consequential damages in the contract. Nor does U.S. Pipeline argue that the waiver is unconscionable. Rather, the dispute lies with the provision's relevance. Northern asserts that the contract's waiver of consequential damages is controlling and dispositive because the damages alleged and awarded were consequential, whereas U.S. Pipeline argues that the provision is irrelevant because the damages alleged and awarded were direct results of the Extra Work Northern requested U.S. Pipeline to complete under the contract.

The waiver at issue in this case stated that consequential damages were

> "INCLUDING BUT NOT LIMITED TO LOSS OF PROFIT, BUSINESS INTERRUPTION, LOSS OF REVENUE, LOSS OF USE, LOSS OF CONTRACT, LOSS OF THROUGHPUT, LOSS OF GOODWILL, INCREASED COST OF WORKING OR LOSS OF BUSINESS OPPORTUNITY[.]"

Thus, the provision states what kinds of damages would be included under the umbrella of consequential damages rather than addressing the cause of those damages and when they might be deemed consequential rather than direct. The contract does not define direct damages. Further, the terms of this "definition" do not purport to change the common-law definition of "consequential damages." Based on this, we, like the parties, rely on the common law to clarify the meaning of the term.

[10,11] Consequential damages, as opposed to direct damages, do not arise directly according to the usual course of things from a breach of contract itself.[19] Rather, they occur

---

[18] See, *Adams v. American Cyanamid Co., supra* note 8; 6 Bruner & O'Connor, Jr., *supra* note 17.

[19] *Creighton University v. General Elec. Co.*, 636 F. Supp. 2d 940 (D. Neb. 2009) (citing *Adams v. American Cyanamid Co., supra* note 8).

- 467 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

as a consequence of special extracontractual circumstances known or reasonably supposed to have been contemplated by the parties when the contract was made.[20] Direct damages refer to those which the party lost from the contract itself—in other words, the benefit of the bargain—while consequential damages refer to economic harm beyond the immediate scope of the contract.[21] One common example of consequential damages is the lost profits or revenues from outside parties, lost business opportunities, or other sums forgone as a result of a breach of contract.[22]

The parties do not disagree as to the definition of consequential damages, but, rather, as to its application to the facts of this case. Northern relies on *Creighton University v. General Elec. Co.*[23] in support of its argument that the damages at issue in this case are consequential as opposed to direct damages. In *Creighton University*, the plaintiff was damaged when it was unable to collect $2.4 million in billings because of "delayed implementation" of a healthcare technology system by the defendant.[24] The plaintiff argued that these losses were direct damages because they "'were naturally expected to follow from breach of the [parties' contract] because the net billings would have been collected had the System been able to process claims in a timely manner

---

[20] *Id.*

[21] *Penncro Associates, Inc. v. Sprint Spectrum, L.P.*, 499 F.3d 1151 (10th Cir. 2007) (citing Restatement (Second) of Contracts § 347(a) and comments *a.* and *c.* (1981); Black's Law Dictionary 416-17 (8th ed. 2004); 24 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 64:12 (4th ed. 1993)).

[22] See, e.g., *Penncro Associates, Inc. v. Sprint Spectrum, L.P., supra* note 21; *McCoolidge v. Oyvetsky*, 292 Neb. 955, 874 N.W.2d 892 (2016); *El Fredo Pizza, Inc. v. Roto-Flex Oven Co.*, 199 Neb. 697, 261 N.W.2d 358 (1978); *Adams v. American Cyanamid Co., supra* note 8. See, also, Restatement, *supra* note 21, § 351, comments *a.* and *b.*

[23] *Creighton University v. General Elec. Co., supra* note 19.

[24] *Id.* at 942.

- 468 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

. . . .'"[25] The U.S. District Court for Nebraska rejected this argument. Applying Nebraska law, the court repeated the proposition that consequential damages do not arise directly according to the usual course of things from the breach itself; rather, they occur as a consequence of special circumstances known or reasonably supposed to have been contemplated by the parties when the contract was made.[26] The court then concluded that "[l]abeling the $2.4 million in uncollected claims 'direct damages' does not make them so. In fact, the allegation that the claims were uncollectible because they were not submitted within deadlines established by payors shows that the loss of income was attributable to special circumstances."[27]

Northern attempts to argue that *Creighton University* is similar to this case, because U.S. Pipeline is seeking to improperly "label" the damages it seeks as "direct" damages. Thus, Northern asserts that U.S. Pipeline seeks to ignore the mutual waiver of consequential damages in the contract and recover damages for the indirect consequences of the alleged delay or inefficiencies incurred on the Marquette Replacement.

We find no merit in Northern's argument. *Creighton University* is notably distinguishable from the case at bar. In *Creighton University*, the "consequential" damages that the plaintiff was barred from seeking were collections from *third parties*, which plaintiff was unable to collect because of those deficiencies ("lost income" based on "projected cashflow")— not payments due to the plaintiff under the contract for services rendered. The damages incurred in *Creighton University* were the result of lost income or lost business opportunities, which are clearly consequential damages.

In contrast, the damages incurred by U.S. Pipeline and awarded by the district court were simply the revenue due to

---

[25] *Id*. at 943.

[26] *Creighton University v. General Elec. Co., supra* note 19.

[27] *Id*. at 943.

- 469 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

U.S. Pipeline under the contract for the work performed. At the time Northern authorized the Extra Work to go forward, it agreed to compensate U.S. Pipeline to perform that Extra Work on a modified time-and-materials basis, called the Force Account Work basis under the contract. This was the basis that the district court determined was utilized by Berkowitz in his calculations. The damages were composed of a subset of the actual, out-of-pocket costs it incurred as a direct result of Northern's HDD-related changes and contractual markups from the Force Account Work basis calculations when applicable. U.S. Pipeline did not seek profits or revenues it lost from third parties or lost business opportunities, or any other sums it had to forgo as the result of the Extra Work. Rather, the district court properly awarded U.S. Pipeline only the benefit of its bargain: the recovery of payments owed to it for fulfilling its obligations under the contract, including completing the HDD Extra Work ordered by Northern. These damages flow directly from the contract.

The value of the bargain to U.S. Pipeline was exactly what it sought in damages in the trial court: the time and materials it expended to complete the Extra Work, however long that took, calculated with the small markups allowed under the contract. Direct damages reflect a failure on the part of the defendant to live up to the bargain it made, or a failure of the promised performance itself.[28] Here, Northern failed to remit payment to U.S. Pipeline pursuant to Extra Work completed directly pursuant to the contract. The damages sought by U.S. Pipeline are precisely what direct damages are defined to be, and the parties' contractual provision does not purport to change this definition.

Accordingly, we find that the damages sought by, and subsequently awarded to, U.S. Pipeline were a direct result of the parties' contractual agreement. We find no merit to Northern's

---

[28] 24 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 64:16 (4th ed. 2018).

- 470 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

argument that the district court erred by awarding consequential damages.

## 2. Admissibility of Berkowitz Testimony and Northern's Motions on Directed Verdict

We also find no merit to Northern's arguments that the district court abused its discretion by admitting and failing to strike Berkowitz' testimony which allegedly included in his damages calculations certain work and conditions expressly assumed by U.S. Pipeline or barred under the contract and that the court erred in denying Northern's motion for directed verdict based on these same alleged deficiencies in Berkowitz' testimony.

Northern's first argument in this regard is little more than a restatement of its assertion that Berkowitz failed to separate any direct damages from consequential damages. As noted above, the damages requested by U.S. Pipeline and subsequently awarded by the district court were direct damages and not consequential damages. Based on this conclusion, we must also conclude that the district court properly admitted and considered Berkowitz' testimony as relevant regarding the calculation of damages.

Northern's second argument is that the court should have sustained Northern's objections to Berkowitz' testimony, because Berkowitz' calculation contained "other damages" that U.S. Pipeline could not recover under the contract.[29] These "other damages" that Northern argues are not contractually compensable include compensation for (1) an 18-day holiday break that U.S. Pipeline took during December 2014 and January 2015; (2) days in which U.S. Pipeline was performing "corrective" work[30]; (3) costs and delays associated with subsurface conditions, which were risks assumed by U.S. Pipeline under the contract; and (4) costs and delays associated with work

---

[29] Brief for appellant at 36.

[30] *Id*. at 30.

- 471 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

previously compensated for under Change Orders 14 and 15. Northern asserted in its reply brief and at oral argument that Berkowitz did not utilize the Force Account Work basis as per the contract's requirements when he calculated U.S. Pipeline's damages, but Northern did not specifically assign and specifically argue this in its initial brief.

Northern makes a similar argument in support of its assignment that the court erred in failing to grant its motions for directed verdict. Northern argues that Berkowitz' calculations, the only evidence supporting U.S. Pipeline's damages calculation, were incorrect because Berkowitz included delay damages that were not attributable to Northern in his calculation. Based on this, Northern asserts that U.S. Pipeline failed to prove damages.

[12,13] We find that Northern failed to preserve the errors regarding the methodology and particulars of Berkowitz' calculations. Unless an objection to offered evidence is sufficiently specific to enlighten the trial court and enable it to pass upon the sufficiency of such objection and to observe the alleged harmful bearing of the evidence from the standpoint of the objector, no question can be presented therefrom on appeal.[31] At trial, Northern made only the following objection relative to Berkowitz' testimony: "I object on relevancy, 401, 403, as well as parole [sic] evidence. This testimony is not consistent with the contractor — the change orders that were signed, and so I object on that basis." Northern's objection was not sufficiently specific to alert the trial court that it contested the details or methodology of Berkowitz' calculations, which Northern now takes issue with on appeal. An issue not properly presented and passed upon by the trial court may not be raised on appeal.[32]

[14,15] To the extent that Northern asserted in oral argument that the court erred in admitting Berkowitz' testimony

---

[31] *State v. Swindle*, 300 Neb. 734, 915 N.W.2d 795 (2018).

[32] *State v. Boham*, 233 Neb. 679, 447 N.W.2d 485 (1989).

because his calculations did not use the Force Account Work basis, Northern failed to preserve this argument by failing to assign it as error and argue it in its initial brief. In order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.[33] Errors not assigned in an appellant's initial brief are thus waived and may not be asserted for the first time in a reply brief.[34]

In any event, the district court made a factual finding that the Force Account Work basis was properly used throughout Berkowitz' calculations. The court found Berkowitz' testimony credible and reliable. And the district court determined that all costs included in Berkowitz' calculations were compensable to U.S. Pipeline as damages incurred pursuant to Northern's breach of contract on the Force Account Work basis. With respect to damages, an appellate court reviews the trial court's factual findings under a clearly erroneous standard of review.[35] We cannot say that the district court's finding that Berkowitz' calculations were proper under the contract is clearly erroneous.

With respect to its directed verdict arguments, Northern failed to preserve these arguments because they were not presented below in support of the motions for directed verdict. Instead, in support of its motions for directed verdict, Northern argued that (1) U.S. Pipeline's damages were barred by the consequential damages waiver and (2) there was no genuine issue of fact on U.S. Pipeline's misrepresentation/fraudulent concealment claims regarding "geotechnical information."

[16,17] In an appeal of a trial court's refusal to enter a directed verdict, the appellate court should consider solely those grounds urged by the appellant to the trial court in

---

[33] *Mondelli v. Kendel Homes Corp.*, 262 Neb. 263, 631 N.W.2d 846 (2001).

[34] *Linscott v. Shasteen*, 288 Neb. 276, 847 N.W.2d 283 (2014).

[35] *Bedore v. Ranch Oil Co.*, 282 Neb. 553, 805 N.W.2d 68 (2011).

- 473 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

support of its directed verdict motion.[36] If a party fails to set forth certain arguments as grounds in a motion and renewed motion for directed verdict, such arguments will not be properly preserved for appeal.[37] The arguments that Northern makes on appeal concerning the particulars of Berkowitz' calculations were not presented below. They were not set forth as grounds in Northern's motions for directed verdict.[38] As such, we decline to address Northern's additional arguments on this point.

We note that Northern did not assign or argue that the evidence was insufficient to support the district court's judgment and award of damages in favor of U.S. Pipeline. However, based on the totality of our findings above, and viewing the evidence, including Berkowitz' testimony, in the light most favorable to U.S. Pipeline, it is apparent that the evidence was sufficient.

Based on the analysis above, we find that the district court did not err in (1) admitting and relying upon the entirety of Berkowitz' testimony and (2) denying Northern's motions for directed verdict.

### 3. Northern's Claim for Liquidated Damages

Lastly, Northern assigns that the district court erred in denying Northern's request for a declaratory judgment declaring that it had a right under the contract to withhold $351,000 from U.S. Pipeline as liquidated damages for U.S. Pipeline's failure to meet the September 24, 2014, substantial completion date. Northern contends that because U.S. Pipeline did not request any additional time or a modification of the substantial completion date, the target completion date remained September 24. Because the actual substantial completion date occurred on February 12, 2015, Northern asserts that it was entitled to

---

[36] See *Parks v. Merrill, Lynch*, 268 Neb. 499, 684 N.W.2d 543 (2004).

[37] See *id*.

[38] See *id*.

- 474 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

withhold the full liquidated damages cap amount as set forth within the contract.

In its order, the district court determined that because Northern did not send the revised plans for the Extra Work until October 1, 2014, Northern effectively waived its right to seek liquidated damages under the contract. Because of this delay, Change Orders 14, 15, and 19 were also submitted after the substantial completion date.

[18-22] The determination of whether a contractual provision has been waived is a factual determination.[39] A contractual provision for liquidated damages for delay in performance may be waived.[40] Waiver is a voluntary and intentional relinquishment or abandonment of a known existing legal right or such conduct as warrants an inference of the relinquishment of such right.[41] In order to establish a waiver of a legal right, there must be clear, unequivocal, and decisive action of a party showing such purpose, or acts amounting to estoppel on his or her part.[42] A written contract may be waived in whole or in part, either directly or inferentially, and the waiver may be proved by express declarations manifesting the intent not to claim the advantage, or by so neglecting and failing to act as to induce the belief that it was the intention to waive.[43] Even a provision in a written contract that specifies that a waiver of the conditions and terms of the agreement must be in writing may be waived by acts or conduct.[44]

We agree with the district court's analysis of this matter. Northern's argument that U.S. Pipeline cannot avoid liquidated

---

[39] See, *Pearce v. ELIC Corp.*, 213 Neb. 193, 329 N.W.2d 74 (1982); *Wiebe Constr. Co. v. School Dist. of Millard*, 198 Neb. 730, 255 N.W.2d 413 (1977).

[40] *Wiebe Constr. Co. v. School Dist. of Millard, supra* note 39.

[41] *Davenport Ltd. Partnership v. 75th & Dodge I, L.P., supra* note 6.

[42] *Id.*

[43] *Id.*

[44] *Pearce v. ELIC Corp., supra* note 39.

- 475 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
U.S. PIPELINE v. NORTHERN NATURAL GAS CO.
Cite as 303 Neb. 444

damages because it neglected to request additional time on its change orders is unfounded. By requesting the Extra Work, submitting the designs after the passing of the substantial completion date, and further failing to inform U.S. Pipeline that it intended to enforce the liquidated damages provision in the contract, Northern manifested a clear intent to waive the contractual liquidated damages provision. Northern knowingly requested Extra Work that would clearly exceed the substantial completion date. The district court's determination that Northern's conduct amounted to a waiver was supported by the evidence and cannot be said to be clearly wrong.

Northern alternatively argues that the court should have awarded liquidated damages to Northern for three delays it alleges were attributable solely to U.S. Pipeline: (1) U.S. Pipeline's holiday break in December 2014 and January 2015, (2) U.S. Pipeline's corrective work on the pipe replacement in January 2015, (3) and U.S. Pipeline's execution of work performed for Change Orders 14 and 15 from October 15 to December 16, 2014. However, Northern fails to argue why the waiver the district court found to have occurred as to the liquidated damages provision would apply with lesser force to these specific time periods.

The district court did not err in denying Northern's request for a declaratory judgment upholding its decision to withhold $351,000 in liquidated damages.

## VI. CONCLUSION

For the reasons set forth above, we affirm the decision of the district court in this matter.

Affirmed.

Miller-Lerman and Papik, JJ., not participating.