IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. DAE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

AUGUST DAE, APPELLANT.

Filed July 15, 2025.    No. A-24-933.

Appeal from the District Court for Douglas County: HORACIO J. WHEELOCK, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Abbi R. Romshek for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

INTRODUCTION

August Dae appeals from an order of the Douglas County District Court finding that he was not competent to stand trial but that there was a substantial probability he would become competent within the reasonably foreseeable future. We affirm.

BACKGROUND

On April 24, 2024, an information was filed in the district court charging Dae with terroristic threats, a Class IIIA felony, in violation of Neb. Rev. Stat. § 28-311.01 (Reissue 2016), and use of a deadly weapon (not a firearm) to commit a felony, a Class II felony, in violation of Neb. Rev. Stat. § 28-1205(1)(a) and (b) (Cum. Supp. 2024). These charges stemmed from an incident on March 24 when Dae is alleged to have threatened family members with a knife.

- 1 -

On June 26, 2024, Dae filed a motion to determine competency, which the district court granted that same day. It ordered the Lincoln Regional Center (regional center) to "conduct an outpatient evaluation of [Dae]" at the Douglas County Department of Corrections "to determine if he is competent to stand trial." It also ordered the regional center to "contemporaneously place [Dae] on the inpatient waitlist in the event that the outpatient evaluation is not able to be completed or it is determined that [Dae] needs to undergo further evaluation under the direct supervision of the [regional center] staff."

At a hearing on July 31, 2024, Dae's counsel informed the district court that the regional center was unable to complete a competency evaluation at the jail but confirmed that Dae had been placed on the facility's inpatient waitlist.

On September 16, 2024, the State filed a "Motion to Administer Involuntary Medication," requesting that the district court authorize the involuntary administration of medication to Dae to restore his competency pursuant to Neb. Rev. Stat. § 29-1823 (Cum. Supp. 2024).

On November 21, 2024, the district court held a "contested competency, restoration, and involuntary medication hearing." Pursuant to a court order, Dae was permitted to appear "via [Zoom] from the [regional center]." Dae did not appear, and an administrative technician from the regional center testified that she facilitates patients "to and from Zoom coordinators." When the technician attempted to bring Dae to the court hearing, Dae acknowledged the technician was "standing there," but Dae did not take the "blanket off his head" and he "just refused to get up and do anything." However, Dae's counsel was present at the hearing and waived Dae's appearance with no objection from the State. The State called two witnesses from the regional center to testify: Dr. Stephanie Bruhn, a clinical psychologist, and Jeffrey Austin, a psychiatric nurse practitioner. The State also offered exhibits 2 through 5 into evidence, all of which were received without objection.

Dr. Bruhn testified that she met with Dae in August 2024, following his admission to the regional center, and conducted an initial assessment of his competency. She submitted a written report of her evaluation to the district court, which was admitted into evidence as exhibit 2. In the report, she opined that Dae was not competent to stand trial but that there was "a substantial likelihood that he will be restored to competence in the reasonabl[y] foreseeable future." Dr. Bruhn observed that Dae "demonstrate[d] some capacity to appreciate his presence in relation to time, place, and things." However, he "claimed not to have any current charges," and, "[d]ue to his noncompliance with the interview, no further information could be gathered about his knowledge of the legal actors and plea options." She further stated that Dae had "only just started" taking medication and that his mental health symptoms were "likely . . . interfering with his ability to actively participate in his legal defense." Dr. Bruhn ultimately concluded:

> It is the undersigned's opinion that Mr. Dae is not competent to stand trial. He is not compliant with questions. Thus, it is likely he does not have an understanding of the nature and object of the proceedings against him or his own condition in reference to the proceedings. These issues and his mental health symptoms would interfere with his ability to confer with his attorney in making a rational defense against the proceedings.
>
> If the Court should agree with this opinion, it is recommended that he remain at the [regional center] to participate in competency restoration programming.

At the November 21, 2024, hearing, Dr. Bruhn testified that Dae was not competent to stand trial but that "there is some chance" he will be restored to competency in the reasonably foreseeable future. She then discussed the barriers affecting Dae's competency. She explained that Dae has been diagnosed with "[m]ajor depressive disorder with mixed features," meaning he experiences both depressive and psychotic symptoms. She also stated that he faces "interference from mental health symptoms that are not well managed" due to his refusal to take medication. Further, Dae has exhibited "instances of aggression that [she believes] are related to his mental health difficulties."

Dr. Bruhn opined that medication "would help with some of the problems" she has observed in Dae. She stated that "there is a chance" Dae will be restored to competency if he takes medication and that he will not be able to attain competency without it. However, she explained that effectively managing Dae's mental health symptoms would not "magically" render him competent, emphasizing that "[t]here is still the possibility that he may not be restorable."

Dr. Bruhn also testified about Dae's prior stay at the regional center from April 2020 to June 2021. Based on Dr. Bruhn's report, Dae was admitted to the regional center at that time by a court order finding him incompetent to stand trial on two counts of first degree assault, two counts of use of a deadly weapon to commit a felony, theft by unlawful taking, and criminal mischief. These charges stemmed from Dae allegedly assaulting his mother and his niece with knives, taking a friend's vehicle for 3 days without permission, and using a brick to damage an ATM machine. During Dae's regional center commitment at that time, he took his medication as prescribed. However, in June 2021, Dr. Bruhn concluded that there was not a substantial probability that Dae would be restored to competency in the reasonably foreseeable future. She based this opinion on Dae's clinical assessments, limited education, mental illness, and general cognitive deficits. She noted that Dae "demonstrated the minimal ability to learn and retain some pieces of the competency material" but that it "required the use of visual aids and numerous months with minimal progress." Therefore, "additional competency restoration efforts [were] not likely to produce the result of him being competent to stand trial."

Despite Dr. Bruhn's findings in 2021, she testified that restoration remains possible in the current case. She explained that, while the restoration process would be similar to what was previously attempted, new techniques could be used. When asked about these new techniques, she stated:

> So we might use visual aids to start and he was able to use those somewhat last time and try to work towards moving away from visual aids.
>
> We also have some other sort of handouts and things like that . . . that we can get translated into Karen and assist him with an interpreter with reading those[.]

Dr. Bruhn acknowledged that visual aids had already been used during Dae's prior 13-month stay at the regional center and that he was unable to progress beyond their use. In addition, she had no information indicating whether Dae had received any additional education or experienced any changes in his cognitive functioning since 2021. Dr. Bruhn further stated that Dae received a score of 81 on the "Test of Nonverbal Intelligence" during his prior stay, which is considered below average. However, individuals with lower scores have been successfully restored to competency.

Austin testified that he has been involved in Dae's care since his admission to the regional center in August 2024. During his initial assessment of Dae, Austin observed symptoms such as thoughts of self-harm, depression, disorganized thinking, and paranoia. To address these issues, Austin prescribed Risperdal, an antipsychotic medication. However, Dae denied having a mental illness and discontinued Risperdal after only four doses. Austin subsequently prescribed an alternative medication, Abilify, of which Dae only took one dose before refusing further treatment.

When Austin attempted to meet with Dae the day before the hearing, he found Dae lying in bed, fully covered by a blanket, and refusing to engage with either Austin or the interpreter. Austin characterized this behavior as indicative of paranoia, a symptom commonly associated with schizophrenia. Austin observed no improvement in Dae's mental health following his discontinuation of medication. Further, he testified that "there is a chance" Dae will be restored to competency if he takes medication and that it is "unlikely" he will improve without it. He also stated that he does not know of "any other ways" to improve Dae's mental health aside from prescription drugs. Dae has been offered "less restrictive options," including group and individual sessions with his treatment team, but has declined those opportunities.

Austin also discussed Dae's prior treatment at the regional center from April 2020 to June 2021. During that time, Dae was prescribed various medications, including Risperdal, which he took as directed. Austin testified that while these medications helped reduce Dae's mental health symptoms, he was not restored to competency during that period. Austin clarified that such medications do not improve a person's underlying cognitive ability but instead "increase mental clarity and organization of thoughts" and in turn "help people function better" on a day-to-day basis.

Austin submitted an affidavit in support of the involuntary administration of medication to Dae. In the affidavit, Austin stated:

> It is this provider's opinion, in the case of Mr. Dae, [that] consistently administered antipsychotic/mood-stabilizing medication is essential to the restoration of competence to stand trial. While there is no absolute guarantee that the medication in question -- atypical antipsychotics and mood stabilizers -- will assure success, it is extremely probable that, absent the administration of this type of medication, [Dae's] psychotic symptoms will persist, and he is unlikely to be restored to competence.

Dae did not present any witnesses, and the hearing concluded following closing arguments from both parties.

On December 3, 2024, the district court issued a detailed order finding that Dae was incompetent to stand trial but that there was a substantial probability he will become competent within the reasonably foreseeable future. Consequently, the court ordered Dae "to remain at the [regional center] for appropriate treatment." The court also authorized the involuntary administration of medication to alleviate Dae's dangerous behavior and for the purpose of rendering him competent to stand trial.

In its order, the district court considered each of the arguments Dae raised in his closing argument and concluded that none had merit. First, Dae challenged Dr. Bruhn's opinion based on her previously finding him incompetent in 2021 and that there was not a substantial probability

that he would be restored to competency in the reasonably foreseeable future. In response, the court stated:

> When confronted with this opinion in the current case, Dr. Bruhn stood by her June 3, 2021, opinion but testified that as of the [November 21, 2024, hearing], there are different strategies and approaches that [can] be utilized to restore Mr. Dae to competency that were not available in 2020 and 2021. These include visual aids that are utilized for competency restoration efforts for persons with low cognitive functioning that did not exist in 2020 and 2021. For example, new handouts can be translated in the "Karen" language, which is Mr. Dae's native language.

Second, Dae argued that Dr. Bruhn's written report contradicted her sworn testimony. In her written report, she stated that there was a "substantial likelihood that [Dae] will be restored to competence in the reasonabl[y] foreseeable future." However, during her testimony, she said there was only "some chance" he would be restorable. The district court responded:

> Having considered the entirety of Dr. Bruhn's written opinions and testimonial opinions, it is clear . . . that [she] opines exactly what she wrote in [her written report] . . . . The Court finds that even if Dr. Bruhn's written opinion is in conflict to any degree with her sworn testimony, the resolution of the conflict is in favor of her written opinion . . . .

The court then stated that, to the extent Dr. Bruhn used the word "likelihood" instead of "probability" in her written opinion, the terms are generally synonymous in common parlance.

Third, Dae challenged Dr. Bruhn's opinion on the ground that her finding of restorability was not included in the "Conclusion" section of her written report. The district court rejected this argument, giving "great weight" to Dr. Bruhn's "definitively stated" written opinion that Dae "is not competent to stand trial but there is a substantial likelihood that he will be restored to competence in the reasonabl[y] foreseeable future."

Dae appeals.

## ASSIGNMENT OF ERROR

Dae assigns that the district court erred in finding that there was a substantial probability he will become competent within the reasonably foreseeable future.

## STANDARD OF REVIEW

The question of competency to stand trial is one of fact to be determined by the court, and the means employed in resolving the question are discretionary with the court. *State v. Surber*, 311 Neb. 320, 972 N.W.2d 64 (2022). The trial court's determination of competency will not be disturbed unless there is insufficient evidence to support the finding. *Id.*

## ANALYSIS

A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense. *Id.* The competency standard includes both (1) whether the defendant has a rational as well as factual understanding of the

proceedings against him or her and (2) whether the defendant has sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding. *Id.* There are no fixed or immutable signs of incompetence, and a defendant can meet the modest aim of legal competency, despite paranoia, emotional disorders, unstable mental conditions, and suicidal tendencies. *Id.*

Section 29-1823 sets forth a "decision tree" that district courts are required to follow when evaluating a defendant's competency to stand trial. *State v. Jones*, 258 Neb. 695, 701, 605 N.W.2d 434, 438 (2000). The district court must first determine whether or not the accused is mentally competent to stand trial. *Id*. In making that determination, the district court may cause such medical, psychiatric, or psychological examination of the accused to be made as the court deems warranted, and the court may hold such hearing as it deems necessary. See *id.* If the district court determines that the accused is incompetent to stand trial, then the court must make a determination whether there is a substantial probability that the accused will become competent within the foreseeable future. *Id.* If the district court determines that there is a substantial probability that the accused will become competent within the foreseeable future, then § 29-1823(1) mandates that the court order the accused committed to a state mental hospital or to some other appropriate state-owned or state-operated facility for appropriate treatment until such time as the disability may be removed. *Jones, supra*. Section 29-1823(2) provides for 6-month reviews of the competency determination made by the district court. *Jones, supra*. If, however, the district court determines that there is not a substantial probability that the accused will become competent within the foreseeable future, § 29-1823(3) specifies the appropriate procedure: the State shall either commence civil commitment proceedings or release the accused. *Jones, supra*.

In the present case, the district court entered an order finding that Dae was not competent to stand trial, a fact not contested by the parties. The court then found that there was a substantial probability Dae will become competent within the reasonably foreseeable future and ordered him "to remain at the [regional center] for appropriate treatment until such time as his disability may be removed." In the same order, the court permitted the involuntary administration of medication to Dae for the purpose of rendering him competent to stand trial.

Dae argues that there was insufficient evidence to support the district court's finding that there was a substantial probability he will become competent within the reasonably foreseeable future. He makes similar arguments here that he made before the district court. He contends that Dr. Bruhn testified there is only "some chance" he will be restorable in the reasonably foreseeable future, not a "substantial probability." Brief for appellant at 8. He also claims that, because the court found that he could not be restored to competency in 2021, it should have made the same determination here.

The State counters that the district court's finding is supported by Dr. Bruhn's opinion and that the court "appropriately relied" on her written report. Brief for appellee at 10. To support its position, the State cites Dr. Bruhn's testimony that "there are different strategies and approaches that [can] be utilized to restore Mr. Dae to competency that were not available in 2020 and 2021," and that "people at Dae's cognitive ability level have been restored to competency." *Id*. The State also highlights Austin's testimony that "medication [will] increase Dae's mental clarity and origination of thoughts, which [will] make him better equipped to participate in assessments." *Id*.

Upon review, we find no reversible error in the district court's decision. The court acknowledged the language used in Dr. Bruhn's written report, which found a "substantial likelihood" of restoration within the reasonably foreseeable future, and her testimony, which indicated only "some chance" of restoration. The court chose to give greater weight to Dr. Bruhn's written report, while it also considered "the entirety of Dr. Bruhn's written opinions and testimonial opinions." It concluded that it was "clear, constant, and unequivocal" to the court that Dr. Bruhn opined "exactly what she wrote in [e]xhibit 2." As the sole judge of witness credibility and the weight of testimony, the court acted within its discretion in giving greater weight to Dr. Bruhn's written opinion. See *U.S. Pipeline v. Northern Natural Gas Co.*, 303 Neb. 444, 930 N.W.2d 460 (2019).

Moreover, the district court properly considered Dr. Bruhn's testimony regarding new restoration techniques that were not available during Dae's prior stay at the regional center. Dr. Bruhn explained that the regional center had new materials, such as handouts, that could be translated into Dae's native language and used with the help of an interpreter. This evidence further supports the court's conclusion that restoration remains possible in the current case, despite prior findings to the contrary.

Finally, although Dae does not challenge the district court's decision to authorize the involuntary administration of medication, we observe that the evidence presented at trial on this issue further supports the court's conclusion regarding restoration of competency. Both Dr. Bruhn and Austin indicated that medication is essential to Dae's restoration. Dr. Bruhn testified that medication "would help with some of the problems" she has observed in Dae and that Dae will not attain competency without it. Austin explained that while antipsychotic medication will not improve Dae's cognitive ability, it may "increase mental clarity and organization of thoughts," which "help[s] people function better" on a day-to-day basis. In his affidavit, Austin further opined that "consistently administered antipsychotic/mood-stabilizing medication is essential to the restoration of competence," and that without it, "[Dae's] psychotic symptoms will persist, and he is unlikely to be restored to competence."

> Dae also contends that the district court's
> repeated questioning of the parties at the hearing about whether [it] should force [him] to take medication even without a finding that there is a substantial probability that [he] will become competent within the reasonably foreseeable future is indicative of [its] belief that the evidence was not sufficient to support such [a] finding.

Brief for appellant at 11. Dae suggests that this questioning reflects a "sudden change in position" by the trial court. *Id*. at 12. We do not read the court's questions regarding medications and its subsequent decision regarding restoration to be inconsistent or reflective of any "sudden change" in its position. The court's questions were appropriate, and as discussed above, its determination that there was a substantial likelihood that Dae could be restored to competency in the reasonably foreseeable future was supported by the record.

CONCLUSION

For the foregoing reasons, we affirm the district court's December 3, 2024, order finding that there is a substantial probability Dae will become competent in the reasonably foreseeable future and committing him to the regional center for treatment.

AFFIRMED.